### FRANKENSTEIN v LEONARD et

Ohio Appeals, 2nd Dist, Franklin Co

No 2762. Decided July 6, 1937

Eli G. Frankenstein, Cincinnati, for plaintiff-appellant.

Herbert S. Duffy, Attorney General, Columbus, for defendants-appellees.

## OPINION

By GEIGER, J.

This cause is in this court on appeal upon questions of law.

The plaintiff in his petition states that on October 15, 1935, he purchased from a licensed dealer in the State of Kentucky, for his own personal use in his home, and not for resale, certain intoxicating liquors bearing stamps indicating that the law of the U. S. and the State of Kentucky on the subject of the manufacture of intoxicating liquor had been fully complied with.

He further states the official capacity of the defendants as members of the Board of Liquor Control, and as the director of the department.

He further alleges that defendants advised him that in the event he attempted to bring into his home the said intoxicating liquors that he would be criminally prosecuted unless he first presented the defendants an invoice from the Kentucky dealer and paid defendants based upon such

price, 15% handling charge, and 30% mark-up charge in addition to the sum of $1.00 per gallon.

It is further alleged that the defendants threatened to prosecute plaintiff under §§6064-14, 6064-64, 6064-65, and 6064-55 GC, in the event he either transported into Ohio, or in Ohio or has in his possession intoxicating liquors, the containers of which have not thereon the seal prescribed by the Board of Liquor Control, which seals may be procured only by paying the Board the handling and mark-up charge, in addition to state taxes.

He alleges that defendants take the position that §§6064-1 to 6064-67 GC give them authority to carry out their threat, and that said sections of the General Code are valid, which contentions of the defendants are denied by plaintiff.

The plaintiff sets out at length his claims, asserting the invalidity of the various sections, and also the position taken by the defendants in their claim that the several statutes are constitutional and valid.

Plaintiff again asserts that he disputes and denies the position of the defendants, and but for the filing of this action for a declaratory judgment, to determine the invalidity of said sections and his rights and immunities thereunder, he would be obliged to submit to arrest and possible imprisonment, should a court decide that his contentions are incorrect, and that he would suffer great loss thereby; that the entering of a declaratory judgment will terminate the uncertainty and will settle and afford relief from the uncertainty with the respects of the rights of the plaintiff and defendants.

The plaintiff prays that the court enter a declaratory judgment, determining that said sections are invalid.

To this petition the defendants filed a general demurrer, which being considered by the Court of Common Pleas, was sustained, the court finding that the petition does not state a cause of action in favor of plaintiff as against the defendants, in the matters complained of.

The plaintiff not desiring to amend his pleading nor to plead further, it was ordered that the petition be dismissed.

Thereupon plaintiff and appellant gave notice of appeal on questions of law to this court, from the judgment rendered by the Court of Common Pleas.

## PROCEDURE

It is first observed that this proceeding is brought under favor of the Chapter on Uniform Declaratory Judgments—§§12102-1—12102-16 GC.

The appropriate section provides in substance that courts shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

Sec 12102-5, GC, provides that the enumeration in §§2, 3 and 4 does not limit or restrict the exercise of the general powers conferred in §1, in any proceeding where declaratory relief is sought, in which a judgment or decree will determine the controversy or remove an uncertainty.

Sec 12102-6, GC, provides that the court may refuse to render a declaratory judgment where such judgment if rendered would not terminate the uncertainty or controversy giving rise to the proceeding.

Under the chapter in reference to declaratory judgment both the plaintiff and the court are circumscribed by the provisions of the statutes as to what may be brought to the attention of the court by the plaintiff, or decided by the court itself.

The plaintiff in his petition asserts that he purchased from licensed dealers in the State of Kentucky, for his own use, and not for re-sale the liquors in question, and that defendants threatened to prosecute him under certain sections.

This status of the plaintiff and his rights are the only matters that can be considered by the court under the chapter relating to declaratory judgments. Under his own statement he occupies a certain position which gives him the right to declaratory judgment touching the facts alleged.

He asserts that the defendants threatened to prosecute him under §§6064-16-64-65-55 GC.

We might examine briefly the purport of each of these statutes.

Sec 6064-14 GC provides in substance that, so far as relates to his position, no person shall transport or import any intoxicating liquor in or into this state, for use herein, unless such person shall have fully complied with the provisions of the Act, and shall be the holder of a permit issued by the Department of Liquor Control and in force at the time.

Under the provisions of this section, the person importing or transporting liquor must not only have complied with the provisions of the Act, but shall be the holder of a permit issued by the Department. Plaintiff makes no claim that he desires to be the holder of a permit.

Sec 6064-15 GC sets out the classification

of permits. some of which relate to the manufacture of beer, wine, and spirituous liquors, and the sale and warehousing thereof most of which do not have the remotest connection with the activities he must engage in to transport his Kentucky liquor to his home in the State of Ohio.

We have searched this section §6064-15 GC, and have not as yet discovered an appropriate permit to be issued to plaintiff to permit him to legally function under §6064-14 GC, in reference to the matters of which he complains.

Sec 6664-55 GC provides that whoever not being a holder of Class H Permit, transports or imports intoxicating liquor in this state, shall be deemed guilty of a misdemeanor and fined.

The section shall not apply to the transportation of intoxicating liquor purchased from the holder of a permit issued by the Department of Liquor Control, or from the Department or the Tax Commission.

Permit H, referred to in the last mentioned section, is a permit to a common carrier or a contract carrier to transport or import intoxicating liquor for delivery or use in this state.

Under his asserted status he could not be the holder of Permit H, and would be subject to the fine, unless under the exception, he had purchased his liquor from the holder of a permit issued by the Department, or purchased from the Department itself or the Tax Commission. His position does not bring him within any of those exceptions.

Therefore, if he transports or imports his Kentucky purchased liquor into Ohio, and transports it to his place of residence, he might be prosecuted as one who, not the holder of Class H Permit, was transporting or importing liquor in this state.

It is also alleged that defendants threaten to prosecute him under §6064-64 GC. This question provides in substance that whoever. not being the holder of a permit, has in his possession intoxicating liquor in one or more bottles, or other recepticles, not having thereon the seal prescribed by the Board of Liquor Control, unless such liquor shall have been lawfully acquired by him pursuant to the Liquor Control Act, shall be deemed guilty of a misdemeanor and shall be fined as therein provided, and the possession of such liquor in such bottles or other recepticles, shall be considered as prima facie evidence that. the same was not lawfully acquired by the defendants, pursuant to the Control Act.

This section would permit the punishment of plaintiff, if not being the holder of a permit he has in his possession the intoxicating liquor in a bottle not having thereon the seal prescribed by the board.

Sec 6064-65 GC provides that whoever violates any provision of the Control Act, for which no penalty is provided, shall be guilty, and upon conviction shall forfeit his permit and shall be fined as therein provided.

The plaintiff not having a permit, and not intending to have a permit, it is doubtful if this section would apply to him.

We have thus seen that of the four sections enumerated by the plaintiff for the violation of which he asserts that the defendants will prosecute him, there is only one, §3064-64, GC, and possibly §6064-55 GC, which can possibly apply to the classification in which he has placed himself by his petition, to-wit, one who has purchased from a licensed dealer in another state, for his own use in his home and not for re-sale, liquor bearing stamps indicating that the laws of the U. S. and of Kentucky have been complied with, and who desires to import said liquor into Ohio and transport it to his home and there keep it for his private use.

We therefore have the questions before the court, which call for the exercise of our power to make a declaratory judgment as to whether the plaintiff not being the holder of a permit, and having in his possession liquor in one or more bottles or other receptacles, not having the seal prescribed by the Board of Liquor Control, and not having been lawfully acquired by him pursuant to the Liquor Control Act, may be deemed guilty of this misdemeanor, under §6064-64, GC or whether the plaintiff not being the holder of a Class H Permit transports or imports liquor in this state, when such liquor does not come within the exemptions, can be punished under §6064-55 GC.

All other questions raised by the pleading, or by the notice of appeal, are beyond our jurisdiction. It is true that the determination of these two questions may draw into consideration the entire Act, but if so, such a situation must spring from our right to consider the plaintiff's status under these two sections.

Reverting to plaintiff's petition, but without detail, we may safely confine. our examination to determine the legal authority of the defendants to act in division 1, 2, 7, 8 and 12.

The other activities with which it is claimed the plaintiff is threatened are too

remote from the plaintiff's status, to engage or permit the exercise of our right to enter a declaratory judgment.

## THE LAW

We are indebted to counsel for both sides of this controversy for very extensive and excellent briefs. We may not be able to take up each contention advanced by counsel, and comment upon them in detail, but we have carefully read the briefs and most of the cases cited by counsel.

It may be of some value to briefly sketch the salient provisions of the statute, not going into detail.

The sections may be found in Chapter 15, "Intoxicating Liquors." The Department of Liquor Control is created, consisting of a Board of Liquor Control of four members, which shall have power to adopt rules and orders necessary to carry out the provisions of the Act, which include many orders, rules, and regulations determining the form and capacity of packages and bottles to be used for containing liquor; and governing, consistently with the law, the form of all seals and labels to be used thereon. The Board may require the label on every package, bottle and container to state the ingredients, etc. The Board may regulate the price at which the liquor may be sold by the Department, and in fixing the selling price the Department may compute anticipated gross profit of not to exceed 30%, based on costs plus the sum required to be paid to the State Treasurer. (We do not find any authority for a 15% "handling charge" under the facts set out in the petition. It may exist but has escaped our search.)

The enumerated powers of the Board shall not derogate from any other power expressly or impliedly granted to the Board, but excepting as herein expressly provided, the Board shall not have or exercise executive or administrative duties or powers.

The Board may exercise among others the following powers: To control the importation of intoxicating liquors; to control the state liquor stores; to establish and maintain a state monopoly of distribution of liquor and the sale thereof in packages or containers, and for such purpose to manufacture, buy or import liquor in the manner provided in the Act, and in the regulation promulgated by the Board pursuant to the Act; to borrow money and issue bills of exchange; but any and all obligations of the Department shall be a charge only upon the money received by the Department from the sale of spirituous liquors, pursuant to the Act.

The Board is authorized to enforce the provisions of the Act and the rules of the Board relating to the importation and transportation of intoxicating liquor, and the attorney general and other officials named shall, at the request of the Department, prosecute any person charged with any penal provisions of the Act.

The Department shall sell spirituous liquor only, which shall be in sealed containers.

No person shall transport or import, or cause to be transported or imported for delivery, use, or sale in this state, unless such person shall have complied with the provisions of the Act, and shall be the holder of a permit.

Various permits are provided to cover different activities under the act, which permits may be revoked for a violation of any of the applicable restrictions of the Act, or of any regulation of the Board.

Certain penal sections are provided only two of which, as we have formerly pointed out, are applicable to the status of the plaintiff. The sections are declared to be independent, and if any section shall be held invalid, such holding shall not affect the remainder of the Act.

The imposition by the Tax Commission of retaliatory taxes, fees and charges against imports from other states, is provided for.

## CLAIM OF PLAINTIFF

It is asserted by plaintiff that this Act is inconsistent and void in many particulars, among which we may note and allege violation of the following sections of the **Ohio Constitution; §1, XIII and §§1 and 26 of Article II.**

It is also asserted that the Act is violative of **§§8, 9, and 10, paragraph 2 of Article I,** and of the 5th Amendment and §4 of Article IV of the Constitution of the United States.

**Sec 1 of Article XIII of the Constitution of Ohio** provides that the General Assembly shall pass no special act conferring corporate powers.

Without going into detail, we are convinced that there is no basis for the claim that the Act in question is a special Act conferring corporate powers upon the Board, or any other controlling agency, designated to carry into effect the provisions of the Act.

The State of Ohio has assumed, as it properly may, the right to control the traffic in intoxicating liquor, and has provided various agencies for that purpose, con-

ferring upon them special and appropriate powers, well within the limits of the public service to be performed by them, and of the general power and purpose of the State in controlling the traffic.

Counsel for plaintiff urges that the Supreme Court of the United States has determined that they are corporate functions, exercised by the State, and that logically to this extent the function of the State are those properly exercised by a corporation.

Counsel cites the case of State of Ohio v Helvering et, 292 U. S. 359, and South Carolina v U. S., 199 U. S. 437.

In our judgment these cases do not support the contention of plaintiff.

Both cases involve the same contention upon the part of the respective states, to the effect that the acts of each state providing for the exercise of governmental function in the monopolistic control of the liquor traffic and that therefore the traffic conducted was a governmental function not subject to federal taxation.

The effect of these decisions is simply that the states when selling intoxicating liquor through the agencies provided by the state acts, were subject to Federal excise taxes on the sale of liquor, wholesale or retail.

Incidentally, these two cases might be urged against the claim of plaintiff that the act is violative of the constitutional guaranty that every state shall have a republican form of government.

The plaintiff urges that so far as the liquor Act is concerned, it has departed from the guaranty of republican form of government, and is in fact the activities of a communistic state.

In the two cases cited, such an argument was not advanced, nor such a judgment rendered and the decision related to the identical act in Ohio, and a similar act in South Carolina.

· It would not be profitable to discuss at length these two cases, as they are of sufficient importance to justify a detailed study, too long for this opinion.

Plaintiff also asserts that the act is violative of §§1 and 26 of Article II of the State of Ohio, in that it delegates to the Board certain powers that are in fact legislative, and that the Act is not of uniform operation throughout the state.

We fail to see where there is any delegation of authority to the Board of powers which belong exclusively to the legislative or judicial branch of the government.

Many cases might be cited in which the principles which control in the event that a state official exercises some powers as to whether or not such act is a violation of the provisions of the constitution above pointed out.

We cannot examine all these cases, but will cite briefly a few:

In State ex v Ohio State Board, 114 Oh St 270, it is held that a state board in revoking a license is performing an executive and not a judicial function. In the opinion it is pointed out that the mere fact that there must be a hearing does not render the action of the Board a judicial function.

It is not necessary to examine that case in detail, but it goes to the effect that many executive officials act judicially in the determination of facts in the performance of their duties, and so doing they do not exercise judicial powers, as that phrase is commonly used, and as it is used in the organic act, in conferring of judicial powers upon specified courts.

In the recent case of **Coady, appellees v Leonard, appellant, O.L.R., April 5, 1937, 132 Oh St p. 329,** it is held that a provision which gives the Board of Liquor Control power to adopt and promulgate rules governing advertising, confers only administrative power on the Board, and is not violative of §1, **of Article II of the Constitution** as a delegation of legislative power.

The Legislature may confer upon an administrative Board power to adopt subordinate rules of guidance.

"But the rule relaxes somewhat as to the necessity for such limitations and restrictions, where wide power is imperative in law enforcement; and many authorities have held that standards or criteria for guidance are not necessary in cases in which the discretion to be exercised by administrative officers relates to police regulation, protection of the public morals, health, safety or general welfare."

The Liquor Act creates a system of control of the manufacture, importation and sale of intoxicating liquors, and a state monopoly of the distribution. To accomplish this end, wide powers were given to the Board of Control.

In **State ex Superior Distributing Company v Davis,** decided by the Supreme Court March 24, 1937, **O.L.R. April 5, 1937, page 70:**

"The provisions of §6064-67, GC, and regulations of the Tax Commission of Ohio

adopted pursuant to authority therein conferred, do not constitute a delegation of legislative power and are not violative of §1 of Article II of §5 of Article XII of the State Constitution."

In that case the court quotes Judge Ranney's opinion, as follows:

"The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first can be done; to the latter no valid objection can be made."

The Legislature must declare the policy of the law, but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy applies.

Where the authority to hear and determine controversies which do not involve the exercise of judicial power is conferred by the Legislature upon the executive branch of the government, with finality of determination, there is no denial of due process at law under state or federal constitution. "Neither the granting or revoking of a license is the exercise of judicial power."

In the case of Miami County v Dayton, 92 Oh St 215, it is held:

"Where a power is quasi-legislative, and quasi-administrative or quasi-judicial or so mixed in its nature that it may be regarded as a combination of all of them, the Legislature may in the first instance characterize such power and confer it either upon an existing agency of the government or an agency especially created for that purpose."

In the case of State ex v Park Dist., 120 Oh St 464, at page 479, it is held:

"While the Legislature may not delegate to any other power the right to declare principles and standards, or general public policy, it may delegate to other competent agencies the power to determine whether or not they will avail themselves of the privilege conferred, and also delegate to certain named executive or administrative agencies authority involving discretion in relation to the execution of the law."

State ex v O'Brien, 130 Oh St 23; Matz, Admr. v Cartage Co., 132 Oh St 271. Our definite conclusion is that the power granted to the Liquor Board to act and exercise discretion within the limits of the Act itself, do not constitute a delegation of legislative authority nor invoke judicial power, and that the act is not, as claimed by plaintiff, violative of the section last enumerated.

Without going into specific detail as to the complaint of the plaintiff of this Act as violative of certain provisions of the Constitution of Ohio, or of the United States we are unable to detect any defect which would render the Act invalid, under the provisions of either constitution.

There are certain cases which clearly support this position which no doubt are now familiar to counsel.

The case of the State Board of Equalization v Young's Market Company, decided by the U. S. Supreme Court November 9, 1936, reported in Vol. 57, No. 2, Supreme Court Reporter, page 77, it is held:

"Under twenty-first Amendment prohibiting importation of intoxicating liquors into states in violation of laws of state, state could adopt lesser degree of regulation than total prohibition, and could prohibit or limit importation of intoxicating liquors whether or not state established monopoly on liquor trade."

The court says:

"The amendment which 'prohibited' the 'transportation or importation' of intoxicating liquors into any state 'in violation of the laws thereof,' abrogated the right to import free so far as concerns intoxicating liquors. The words used are apt to confer upon the state the power to forbid all importations which do not comply with the conditions which it prescribes."

"Can it be doubted that a state might establish a state monopoly of the manufacture and sale of beer, and either prohibit all competing importations or discourage importations by laying a heavy impost, or channelize desired importations by confining them to a single consignee. There is no basis for holding that it may prohibit, or so limit importation only if it establishes monopoly on the liquor trade."

"The claim that the statutory provisions and the regulations are void under the equal protection clause may be briefly disposed of. A classification recognized by the twenty-first amendment cannot be deemed forbidden by the Fourteenth."

This decision of the Supreme Court is discussed at length in State ex v Davis, above cited. The supreme Court of Ohio says every argument advanced by the re-

lator upon this branch of the case (similar to the questions raised here) has been answered adversely by the unanimous decision of the Supreme Court of the United States in the case of State Board of Equalization v Young's Market Company.

Under this interpretation of the law the only questions that the plaintiff may present are those involved in §§6064-64 and 6064-55, GC, and there can be no question that the Board has a right to prohibit the importation of intoxicating liquors in any other manner than that provided. The state has provided that one who does so without meeting the requirements of the state is guilty of misdemeanor. This would apply generally to §6064-65 GC.

Sec 6064-64 GC provides that one not being the holder of a permit who has in his possession intoxicating liquor in one or more bottles, not showing thereon the seal prescribed by the state, may be punished.

It is claimed by the plaintiff that a prosecution under these statutes involves the question as to whether the Liquor Department has a right, under the power conferred, to provide seals, and insists that they be applied to the containers of the liquor lawfully purchased in Kentucky.

Under the broad power conferred upon the Board to regulate the traffic in intoxicating liquor in the State of Ohio, and in view of the decisions in relation thereto we can conceive of no reason why we can, by declaratory judgment, hold that the plaintiff may import the liquor into the state, and transport it to his home, free from prosecution. To be entitled to do this, he must conform to the laws of the state, and these laws require that the containers bear the seal provided by the Board.

It is urged that the Federal Alcoholic Administration Act approved August 29, 1935, by its provisions, forbids the state to engage in the monopoly of trafficking in intoxicating liquors. By virtue of the provisions of that Act, it shall be unlawful for any person as an importer or wholesaler to require that any retailer purchase such products from such person to the exclusion in whole or in part, of beverages sold or offered for sale by other persons, in interstate or foreign commerce.

Counsel supports his claim by citing the holding of the Supreme Court of the United States in the cases of State of Ohio v Helvering, and the State of South Carolina v United States, hereinbefore discussed claiming that these two cases clearly bring the state in the same class as any other dealer who seeks to monopolize the traffic.

We are not impressed with this argument.

Sec 3, providing for the basic permit, specifically excludes from the operation of the section any agency of a state or political subdivision, or any officer or employee of any such agency, and no such agency or officers or employees shall be required to obtain a basic permit under this Act.

Aside from that section, we are of the opinion that the Federal Act does not attempt to control the operation of any state within its limits by such restrictive provisions as the state sees fit to make.

The Twenty-first Amendment clearly states: "The transportation or importation into any state, territory or possession of the United States, for delivery or use therein, of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." That seems to be a constitutional declaration that the states shall have entire liberty within their own boundaries to control the traffic and sale of intoxicating liquors, even to the extent of prohibition, and certainly to the extent of providing a state monopoly.

The Ohio, the South Carolina and the California cases before the Supreme Court, each provided for a state monopoly and in each the restrictions claimed to be invalid were sustained.

We are impressed with the clarity of the decision of the court below, and do not see why that court's judgment in sustaining the demurrer should be disturbed.

Demurrer sustained. Entry accordingly.

BARNES, PJ, concurs.
HORNBECK, J, concurs in judgment.