ARIZONA *v.* CALIFORNIA ET AL.

No. —, original. Return to Rule to Show Cause Presented April 2, 1934.—Decided May 21, 1934.

*Mr. Arthur T. LaPrade,* Attorney General of Arizona, and *Messrs. Charles A. Carson, Jr.,* and *A. M. Crawford* were on the brief for plaintiff.

*Mr. U. S. Webb,* Attorney General of California, and *Messrs. I. W. Stewart, Arvin B. Shaw, Charles L. Childers, E: C. Finney, Ray L. Chesebro, James M. Stevens,* and *Fred M. Bottorf* were on the brief for California et al., defendants.

*Messrs. James H. Howard, Northcutt Ely, Ray W. Bruce, C. L. Byers, Phil D. Swing,* and *Thos. Whelan,* were on the brief for the Metropolitan Water District of Southern California et al., defendants.

*Mr. Paul P. Prosser,* Attorney General of Colorado, *Mr. Gray Mashburn,* Attorney General of Nevada, *Mr. E. K. Neumann,* Attorney General of New Mexico, *Mr. Joseph Chez,* Attorney General of Utah, and *Mr. Ray E. Lee,* Attorney General of Wyoming, were on the brief for Colorado et al., defendants.

*Solicitor General Biggs, Assistant Attorney General Blair,* and *Messrs. Charles Bunn, Aubrey Lawrence,* and *Nathan R. Margold* were on the brief for Ickes, Secretary of the Interior, defendant.

By leave of Court, *Messrs. James D. Parriott, R. C. Hecox, Malcolm Lindsey,* and *Stanley P. Smith* filed a brief on behalf of the City and County of Denver, as *amici curiae.*

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

On October 13, 1930, Arizona sought, by an original bill, a declaration that the Colorado River Compact and the Boulder Canyon Project Act be decreed to be unconstitutional and void; that the Secretary of the Interior and California, Nevada, Utah, New Mexico, Colorado and Wyoming be permanently enjoined from carrying out said Compact or said Act; and that they be enjoined from performing contracts which had been executed by the Secretary on behalf of the United States for the use of stored water and developed power after the project shall have been completed, and from doing any other thing under color of the Act. The bill was " dismissed without prejudice to an application for relief in case the stored water is used in such a way as to interfere with the enjoyment by Arizona, or those claiming under it, of any rights already perfected or with the right of Arizona to make additional legal appropriation and to enjoy the same." *Arizona* v. *California,* 283 U.S. 423, 464.

On February 14, 1934, Arizona moved for leave to file in this Court its original bill of complaint to perpetuate testimony in an action or actions arising out of the Boulder Canyon Project Act which " at some time in the future " it will commence in this Court against California, and others therein named as defendants.[1]  The bill sets forth:

(a) The Act of Congress, August 19, 1921, c. 72, 42 Stat. 171, which authorized Arizona, California, Colorado, Nevada, New Mexico, Utah and Wyoming to enter into a compact regarding the waters of the Colorado River; and the appointment of a representative to act for the United States.

(b) The Colorado River Compact dated November 24, 1922, signed by representatives of the seven States—to " become binding and obligatory when it shall have been approved by the legislature of each of the signatory States and by the Congress of the United States."

(c) The Act of Congress, December 21, 1928, known as the Boulder Canyon Project Act, c. 42, 45 Stat. 1057, which approved the Colorado River Compact subject to certain limitations and conditions, the approval to become effective upon the ratification of the compact, as so modified, by the legislature of California and at least five of the other six States.

(d) The Act of California, c. 16, March 4, 1929, limiting its use of the waters of the Colorado River in conformity with the Boulder Canyon Project Act.

(e) The Proclamation of the President declaring the Boulder Canyon Project Act to be in effect, June 25, 1929, 46 Stat. 3000.

---

[1] Namely, Colorado, Nevada, New Mexico, Utah, Wyoming, Harold L. Ickes, Secretary of the Interior, Palo Verde Irrigation District, Imperial Irrigation District, Coachella Valley Water District, Metropolitan Water District of Southern California, City of Los Angeles, City of San Diego, and County of San Diego.

(f) The General Regulation of the Secretary of the Interior, concerning the storage of water in Boulder Dam Reservoir and the delivery thereof, dated April 23, 1930, as amended September 28, 1931.

The bill alleges, among other things:

That no right of Arizona has yet been interfered with; that attempts will be made hereafter to interfere with its rights; that it is not possible to bring the issues which will arise to an immediate judicial investigation or determination and it may be years before this can be done because " the cause or causes of action have not accrued and may not accrue for years to come "; that facts known only to certain named persons will be evidence material in the determination of such controversy or controversies; that these persons will be necessary witnesses in the prosecution of the action or actions which Arizona will be compelled to institute in order to protect its rights and those of persons claiming under it; and that all the persons with present knowledge of the present facts may not be available as witnesses when the cause or causes of action shall have accrued to the plaintiff. The prayer is for process to take the oral depositions and to perpetuate the testimony of these witnesses.

On February 20, 1934, a rule issued to those named as defendants to show cause why leave to file the bill should not be granted. All filed returns. Colorado, Nevada, New Mexico, Utah and Wyoming stated that they have no objection to the filing of the bill or to the taking of any competent testimony; and prayed that to each state should be granted the right of cross-examination and the right to object to any such testimony on any ground either at the time of the taking or of its presentation to this Court. California and the public agencies of that state expressed a doubt as to the existence of jurisdiction in this Court. They opposed the granting of the motion on the ground that the testimony if taken

would not be admissible in evidence; opposed also on the ground that the United States is an indispensable party; and insisted that the bill should not be received in the absence of consent by the United States to be sued. The Secretary of the Interior conceded that this Court has jurisdiction, but objected on the same grounds as California to granting the motion. Thereupon, a brief was filed by Arizona, reply briefs by respondents and a brief *amicus curiae* by the City and County of Denver, Colorado.

*First.* No bill to perpetuate testimony has heretofore been filed in this Court; but no reason appears why such a bill may not be entertained in aid of litigation pending in this Court, or to be begun here. Bills to perpetuate testimony had been known as an independent branch of equity jurisdiction before the adoption of the Constitution.[2] Congress provided for its exercise by the lower federal courts.[3] There the jurisdiction has been repeatedly invoked;[4] and it has been recognized by this Court.[5]

The sole purpose of such a suit is to perpetuate the testimony. To sustain a bill of this character, it must appear that the facts which the plaintiff expects to prove

---

[2] 1 Pomeroy's Equity Jurisprudence, (4th ed.) § 211; *West* v. *Lord Sackville*, L.R. [1903] 2 Ch. Div. 378.

[3] Revised Statutes, § 866: ". . . any circuit [district] court upon application to it as a court of equity, may, according to the usages of chancery, direct depositions to be taken *in perpetuam rei memoriam*, if they relate to any matters that may be cognizable in any court of the United States. . . ."

[4] *New York & Baltimore Coffee Polishing Co.* v. *New York Polishing Co.*, 9 Fed. 578; 11 Fed. 813; *Richter* v. *Jerome*, 25 Fed. 679; *Westinghouse Machinery Co.* v. *Electric Storage Battery Co.*, 170 Fed. 430; reversing 165 Fed. 992; *The West Ira*, 24 F. (2d) 858; *Todd Engineering Co.* v. *United States*, 32 F. (2d) 734; *Union Solvents Corp.* v. *Butacet Corp.*, 2 F.Supp. 375.

[5] *Richter* v. *Union Trust Co.*, 115 U.S. 55; compare *Green* v. *Compagnia Generale*, 82 Fed. 490, 494–5.

by the testimony of the witnesses sought to be examined will be material in the determination of the matter in controversy; that the testimony will be competent evidence; that depositions of the witnesses cannot be taken and perpetuated in the ordinary methods prescribed by law, because the then condition of the suit (if one is pending) renders it impossible, or (if no suit is then pending) because the plaintiff is not in a position to start one in which the issue may be determined; and that taking of the testimony on bill in equity is made necessary by the danger that it may be lost by delay.

The allegations of the bill presented by Arizona are sufficient to show danger of losing the evidence by delay; and also to show Arizona's inability to perpetuate the testimony by the ordinary methods prescribed by law for the taking of depositions. The only question which requires consideration is whether the testimony which it is proposed to take would be material and competent evidence in the litigation contemplated.

*Second.* The action or actions which Arizona expects to bring may rest upon a claim that " the stored water is used in such a way as to interfere with the enjoyment by Arizona, or those claiming under it, of any rights already perfected or with the right of Arizona to make additional legal appropriations and to enjoy the same." Specifically, Arizona claims rights under § 4 (a) of the Boulder Canyon Project Act; these rights, it is said, are governed in turn by the terms of the Colorado River Compact. Briefly, the Compact apportions the waters of the Colorado River between a group of States, termed the upper basin, north of Lee Ferry, and a group south thereof, the lower basin, among which are Arizona and California. The interference apprehended will, it is alleged, arise out of a refusal of the respondents to accept as correct that construction of Article III (b) of the

Compact which Arizona contends is the proper one. It claims that this paragraph, which declares:

" In addition to the apportionment in Paragraph (a), the lower basin is hereby given the right to increase its beneficial consumptive use of such waters by 1,000,000 acre-feet per annum "

means:

" that the waters apportioned by Article III (b) of said compact are for the sole and exclusive use and benefit of the State of Arizona."

The bill charges that the Secretary of the Interior and the other defendants refuse to accept such construction; and that, by certain contracts made between the Secretary and the California defendants, they are asserting a right to appropriate the said 1,000,000 acre-feet of water to California uses. The bill states that the decision in some future action construing Paragraph (b) will materially affect rights of Arizona arising under the Boulder Canyon Project Act, in particular § 4 (a) thereof.[6]

Arizona seeks, as stated in the bill, to perpetuate, and proposes to introduce in support of its construction of Paragraph (b) of Article III, of the Compact, in the actions to be brought in the future, testimony to the following effect by those who in 1922 were connected with the negotiation of the Compact:

" The representatives of all the States and the United States except the Arizona delegation were in agreement

---

[6] It is claimed that a future decision as to the meaning of Article III (b) will affect rights also under (a) the Colorado River Compact, (b) the conditions required by the Boulder Canyon Project Act to be attached to patents, grants, contracts, concessions, leases, permits, rights of way and other privileges from the United States, (c) the relative and respective rights of each of the parties (to the suit to perpetuate testimony) in the waters of the Colorado and its tributaries, and the use thereof and the burdens and restrictions upon such use.

as to the definition of the Colorado River System, including the Gila River and its tributaries, and as to the division proposed, which substantially apportioned the waters of the Colorado River at Lee Ferry, the point selected as dividing the Upper Basin from the Lower Basin. The Arizona delegation refused and declined to accept the proposed compact because of the inclusion of the Gila River and its tributaries without any compensating provision to the State of Arizona in lieu of the waters thereof, which had already been appropriated and in which no other State could have any interest on account of the further fact that the waters of the Gila River and its tributaries enter the Colorado River at Yuma, at a point so far down stream and of such low elevation that it was and is impossible to put the waters thereof to beneficial use in the United States after they reach the main stream of the Colorado River. Hence, the Arizona delegation pointed out that the conference was discussing something which had already been disposed of and in any event could not concern any State, other than Arizona. Several days elapsed in a discussion between the said representatives of this problem before a solution was found. The problem was finally thought solved by adding subdivision (b) of Article III to the compact as finally approved by said representatives which reads as follows:

" ' (b) In addition to the apportionment in paragraph (a), the Lower Basin is hereby given the right to increase its beneficial consumptive use of such waters by one million acre-feet per annum.'

" It was agreed between all the representatives of the various States and the representative of the United States, negotiating said compact, that said one million acre-feet apportioned by subdivision (b) of Article III of said compact was intended for and should go to the State of Arizona to compensate for the waters of the Gila River and

its tributaries being included within the definition of the Colorado River System and the allocations of said compact, and that said one million acre-feet was to be used exclusively by and for the State of Arizona, that being the approximate amount of water then in use within the State of Arizona from the Gila River and its tributaries, and it was agreed that in view of the fact that no appropriation or allocation of water had otherwise been made by said compact directly to any State, the one million acre-feet for the State of Arizona should be included in said compact by an allocation for the Lower Basin. And it was further agreed that a supplemental compact between the States, California, Nevada and Arizona should be adopted and that such supplemental compact should so provide.

" The Arizona delegation stated that if it were agreed by all the representatives of the several States and of the United States that said million acre-feet should be for the exclusive benefit of the State of Arizona to provide compensation to Arizona on account of the inclusion of the waters of the Gila River and its tributaries in said compact, they would accept said compact, otherwise they would refuse to accept said compact. It was thereupon agreed by all representatives of all the States and of the United States, participating in said negotiations and conferences, that the waters apportioned by Article III (b) of said compact were for the sole and exclusive use and benefit of the State of Arizona, and it was further agreed that a supplemental compact between the States of California, Nevada and Arizona should be adopted and that such supplemental compact should so provide. Thereupon said compact was signed by the representatives of the several States and of the United States."

*Third.* In this suit Arizona asserts rights under the Boulder Canyon Project Act of 1928, not under the Colorado River Compact, which she has refused to ratify.

That Act approved the Colorado River Compact subject to certain limitations and conditions, the approval to become effective upon the ratification of the Compact, as so modified, by the legislatures of California and at least five of the six other states. It was so ratified. Arizona claims that § 4 (a) of that Act imposing limitations on the use of water by California was intended for her benefit; that § 4 (a) embodies by reference Article III (b), among others, of the Compact for the purpose of defining the limitation and that the proper interpretation of Article III (b) will be, therefore, essential to a determination of Arizona's rights under the statute; that, read in the light of other sections of the Compact, Article III (b) is ambiguous; and that the testimony sought to be perpetuated will be material and admissible in removing the ambiguity. The elaborate argument in support of these contentions appears to be, in substance, as follows:

1. Colorado River Compact, apportions the water of the Colorado River System between the upper and the lower basin. By Article II it defines the terms used:

"(a) The term ' Colorado River system ' means that portion of the Colorado River and its tributaries within the United States of America."

"(b) The term ' Colorado River Basin ' means all of the drainage area of the Colorado River system and all other territory within the United States of America to which the waters of the Colorado River system shall be beneficially applied."

"(g) The term ' Lower Basin ' means those parts of the States of Arizona, California, Nevada, New Mexico and Utah within and from which waters naturally drain into the Colorado River system below Lee Ferry and also all parts of said States located without the drainage area of the Colorado River system which are now or shall hereafter be beneficially served by waters diverted from the system below Lee Ferry."

By Article III, the apportionment is made:

"(a) There is hereby apportioned from the Colorado River system in perpetuity to the upper basin and to the lower basin, respectively, the exclusive beneficial consumptive use of 7,500,000 acre-feet of water per annum, which shall include all water necessary for the supply of any rights which may now exist."

"(b) In addition to the apportionment in Paragraph (a), the lower basin is hereby given the right to increase its beneficial consumptive use of such waters by 1,000,000 acre-feet per annum."

"(d) The States of the upper division [Colorado, New Mexico, Utah and Wyoming] will not cause the flow of the river at Lee Ferry to be depleted below an aggregate of 75,000,000 acre-feet for any period of 10 consecutive years reckoned in continuing progressive series beginning with the first day of October next succeeding the ratification of this compact."

Article III does not in terms apportion as between the upper and the lower basin the surplus waters in excess of the amounts specifically allocated. But it recognizes in Paragraph (c) that there may be "surplus" waters in the River, applicable to the lower basin.[7]

■ The Colorado River Compact does not purport to apportion between the States of the lower basin the share of each in the waters of the Colorado River Sys-

---

[7] Paragraph (c) provides: "If, as a matter of international comity, the United States of America, shall hereafter recognize in the United States of Mexico any right to the use of any waters of the Colorado River system, such waters shall be supplied first from the waters which are surplus over and above the aggregate of the quantities specified in paragraphs (a) and (b); and if such surplus shall prove insufficient for this purpose, then, the burden of such deficiency shall be equally borne by the upper basin and the lower basin, and whenever necessary the States of the upper division shall deliver at Lee Ferry water to supply one-half of the deficiency so recognized in addition to that provided in paragraph (d).

tem; but Boulder Canyon Project Act makes some provision for such apportionment. By § 4. (a) it provides that:

" California, by act of its legislature, shall agree irrevocably and unconditionally with the United States and for the benefit of the States of Arizona, Colorado, Nevada, New Mexico, Utah and Wyoming, as an express covenant and in consideration of the passage of this Act, that the aggregate annual consumptive use (diversions less returns to the river) of water of and from the Colorado River for use in the State of California, including all uses under contracts made under the provisions of this Act and all water necessary for the supply of any rights which may now exist, shall not exceed four million four hundred thousand acre-feet of the waters apportioned to the lower basin States by paragraph (a) of Article III of the Colorado River compact, plus not more than one-half of any excess or surplus waters unapportioned by said compact, such uses always to be subject to the terms of said compact."

And that section authorizes Arizona, California and Nevada to enter into an agreement which, among other things, shall provide:

"(1) That of the 7,500,000 acre-feet annually apportioned to the lower basin by paragraph (a) of Article III of the Colorado River compact, there shall be apportioned to the State of Nevada 300,000 acre-feet and to the State of Arizona 2,800,000 acre-feet for exclusive beneficial consumptive use in perpetuity, and (2) that the State of Arizona may annually use one-half of the excess or surplus water unapportioned by the Colorado River compact, and (3) that the State of Arizona shall have the exclusive beneficial use of the Gila River and its tributaries within the boundaries of said State . . . (7) said agreement to take effect upon the ratification of

the Colorado-River compact by Arizona, California and Nevada."

■ Arizona refused to ratify the Colorado River Compact, and the authority conferred upon Arizona, Nevada and California by the Boulder Canyon Project Act to enter into an agreement for apportioning the waters has not been acted on. But California bound itself, by the Act of its legislature, March 16, 1929, to the limitation of 4,400,000 acre-feet, plus one-half of the surplus; Arizona claims that the limitation on California's use must have been enacted for the benefit solely of Arizona, since geographically she alone could use waters in the lower basin which California may not use; and that, because it is embodied in a statute, the limitation imposed by Congress on California's use confers rights upon Arizona, although she failed to sign either the principal or the subsidiary compact.

■ In support of the contention that Article III (b) of the Compact has a bearing on the interpretation of the limitation of § 4 (a) of the Act, Arizona points to the fact that while the Boulder Canyon Project Act makes no mention of the 1,000,000 acre-feet assigned to the lower basin by Article III (b) of the Compact, § 4 (a) of the Act limits California, in terms, to 4,400,000 acre-feet of the waters apportioned to the lower basin under Article III (a) of the Compact plus one-half of the "surplus waters unapportioned by said compact"; that § 4 (a) declares that such uses by California are "always to be subject to the terms of said compact"; that California claims that, in addition to the waters already mentioned, she is entitled, as one of the parties to the Compact, to draw upon the Article III (b) waters; and that, acting upon this assumption, the Secretary of the Interior has already contracted with California users for delivery of 5,362,000 acre-feet of water per annum from the main

stream of the Colorado River, though this water is not yet being delivered; whereas Arizona contends that by a proper interpretation of Article III (b) California is excluded from all the waters thereunder in favor of Arizona.

■ In support of the contention that Article III (b) is ambiguous, Arizona points out that, whereas the Compact awards to the lower basin, in the aggregate, 8,500,000 acre-feet of water,[8] Article III (d) of the Compact shows that only 7,500,000 of this is to come from the main stream of the Colorado River, since that section provides:

" The States of the upper division will not cause the flow of the River at Lee Ferry to be depleted below an aggregate of 75,000,000 acre-feet for any period of 10 consecutive years reckoned in continuing progressive series beginning with the first day of October next succeeding the ratification of this compact."

It argues that the 75,000,000 was doubtless arrived at through multiplying by ten the 7,500,000 acre-feet per annum apportioned to the lower basin under Article III (a); that though the lower basin is entitled to 8,500,000 acre-feet, it can only call on the upper basin to release 7,500,000 acre-feet from the main stream; that the only other waters below Lee Ferry which are available to the lower basin come from tributaries entirely in Arizona; that these waters enter the Colorado River at a point so far south that they could not be used in the United States after they enter the Colorado; and they have in fact been appropriated for use in Arizona; that, therefore, what has in terms been awarded to the lower basin is in practical effect available only to that part of the lower basin constituted by Arizona.

*Fourth.* It is clear that the meaning of the Compact, considered merely as a contract, can never be material in the contemplated litigation, since Arizona refused to ratify

---

[8] That is the 7,500,000 of the Article III (a) waters and the 1,000,000 of the Article III (b) waters.

the Compact. Arizona rests her rights wholly upon the Acts of Congress and of California. Arizona claims that California's construction of § 4 (a) of the statute would allow her water which under the Compact has been assigned to Arizona, and that a conflict is thus raised between the statute and the Compact which the suggested testimony is competent to resolve. But the resolution of this alleged conflict can never be material to any case based on the Compact considered as contract, since Arizona neither has nor claims any contractual right.

*Fifth.* Nor does Arizona show that Article III (b) of the Compact is relevant to an interpretation of § 4 (a) of the Boulder Canyon Project Act upon which she bases her claim of right. It may be true that the Boulder Canyon Project Act leaves in doubt the apportionment among the states of the lower basin of the waters to which the lower basin is entitled under Article III (b). But the Act does not purport to apportion among the states of the lower basin the waters to which the lower basin is entitled under the Compact. The Act merely places limits on California's use of waters under Article III (a) and of surplus waters; and it is " such " uses which are " subject to the terms of said compact."

There can be no claim that Article III (b) is relevant in defining surplus waters under § 4 (a) of the Act; for both Arizona and California apparently consider the waters under Article III (b) as apportioned.[9] It is true that Arizona alleges (not in the bill however but in her brief) that she " hopes to be able to show in the case hereafter to be brought " by evidence of Congressional Committee hearings and other legislative history that the failure in the statute to apportion the 1,000,000 acre-feet of waters was due to an understanding by Congress that Article

---

[9] The Secretary of the Interior in his brief seems to be of the opinion that waters under Article III (b) might be surplus waters under § 4 (a) of the Act.

III (b) of the Compact had already assigned these waters to Arizona and that the limitation on California was passed in the light of this understanding. This hope if fulfilled would not make Article III (b) relevant. The allegation is, not that Congress incorporated Article III (b) into the Act; it is that Congress understood that Article III (b) had allotted all the waters therein to Arizona.

*Sixth.* The considerations to which Arizona calls attention do not show that there is any ambiguity in Article III (b) of the Compact. Doubtless, the anticipated physical sources of the waters which combine to make the total of 8,500,000 acre-feet are as Arizona contends, but neither Article III (a) nor (b) deal with the waters on the basis of their source. Paragraph (a) apportions waters " from the Colorado River system," i. e., the Colorado and its tributaries, and (b) permits an additional use " of such waters." The Compact makes an apportionment only between the upper and lower basin; the apportionment among the states in each basin being left to later agreement. Arizona is one of the states of the lower basin and any waters useful to her are by that fact useful to the lower basin. But the fact that they are solely useful to Arizona, or the fact that they have been appropriated by her, does not contradict the intent clearly expressed in Paragraph (b) (nor the rational character thereof) to apportion the 1,000,000 acre-feet to the states of the lower basin and not specifically to Arizona alone. It may be that, in apportioning among the states the 8,500,000 acre-feet allotted to the lower basin, Arizona's share of waters from the main stream will be affected by the fact that certain of the waters assigned to the lower basin can be used only by her; but that is a matter entirely outside the scope of the Compact.

The provision of Article III (b), like that of Article III (a) is entirely referable to the main intent of the

Compact which was to apportion the waters as between the upper and lower basins. The effect of Article III (b) (at least in the event that the lower basin puts the 8,500,-000 acre-feet of water to beneficial uses) is to preclude any claim by the upper basin that any part of the 7,500,-000 acre-feet released at Lee Ferry to the lower basin may be considered as "surplus" because of Arizona waters which are available to the lower basin alone. Congress apparently expected that a complete apportionment of the waters among the States of the lower basin would be made by the sub-compact which it authorized Arizona, California and Nevada to make. If Arizona's rights are in doubt it is, in large part, because she has not entered into the Colorado River Compact or into the suggested sub-compact.

*Seventh.* Even if the construction to be given Paragraph (b) of the Compact were relevant to the interpretation of any provision in the Boulder Canyon Project Act and such provision were ambiguous, the evidence sought to be perpetuated is not of a character which would be competent to prove that Congress intended by § 4(a) of the 1928 Act to exclude California entirely from the waters allotted by Article III (b) to the states of the lower basin and to reserve all of those waters to Arizona. The evidence sought to be perpetuated is not documentary. It is testimony as to what divers persons said six years earlier while negotiating a compact with a view to preparing the proposal for submission to the legislatures of the seven States and to Congress for approval—a proposal which Arizona has not ratified and which the six other States and Congress did ratify, as later modified, by statutes enacted in 1928 and 1929. The Boulder Canyon Project Act rests, not upon what was thought or said in 1922 by negotiators of the Compact, but upon its ratification by the six States.

It has often been said that when the meaning of a treaty is not clear, recourse may be had to the negotia-

tions, preparatory works, and diplomatic correspondence of the contracting parties to establish its meaning. *Nielsen* v. *Johnson*, 279 U.S. 47, 52; compare *United States* v. *Texas*, 162 U.S. 1; *Terrace* v. *Thompson*, 263 U.S. 197, 223; *Cook* v. *United States*, 288 U.S. 102. See Yü, The Interpretation of Treaties, pp. 138, 192; Chang, The Interpretation of Treaties, p. 59 *et seq.* But that rule has no application to oral statements made by those engaged in negotiating the treaty which were not embodied in any writing and were not communicated to the government of the negotiator or to its ratifying body. There is no allegation that the alleged agreement between the negotiators made in 1922 was called to the attention of Congress in 1928 when enacting the Act; nor that it was called to the attention of the legislatures of the several States.

As Arizona has failed to show that the testimony which she seeks to have perpetuated could conceivably be material or competent evidence bearing upon the construction to be given Article III, Paragraph (b), in any action which may hereafter be brought, the motion for leave to file the bill should be denied. We have no occasion to determine whether leave to file the bill should be denied also because the United States was not made a party and has not consented to be sued.

*Leave to file bill denied.*