**DRESSER INDUSTRIES, INC., a corporation, on its own behalf and on behalf of certain Dresser employees, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

Nos. 78–1942, 78–2212.

United States Court of Appeals, Fifth Circuit.

June 13, 1979.

Rehearing and Rehearing En Banc Denied July 30, 1979.

**1233**

Baker & McKenzie, Francis D. Morrissey, Thomas F. Bridgman, Thomas M. Haderlein, Chicago, Ill., George T. Barrow, Houston, Tex., David R. Macdonald, Chicago, Ill., for plaintiffs-appellants in No. 78–1942.

Baker & McKenzie, Francis D. Morrissey, Thomas F. Bridgman, William J. Linklater, Norman J. Barry, David R. Macdonald, Chicago, Ill., for plaintiffs-appellants in No. 78–2212.

Richard S. Stolker, Dept. of Justice, Washington, D. C., J. A. Canales, U. S. Atty., Richard Parker, Jr., Asst. U. S. Atty., Houston, Tex., John P. Sweeney, James H. Schropp, Arthur M. Schwartzstein, Paul Gonson, Assoc. Gen. Counsel, SEC, Washington, D. C., for defendant-appellee.

Before COLEMAN, GODBOLD, and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge.

This case represents some of the efforts of Dresser Industries, Inc., the plaintiff-appellant, to forestall disclosure of the details of certain transactions which are now commonly referred to as "questionable foreign payments". Dresser filed this suit in the Southern District of Texas seeking, *inter alia,* declaratory and injunctive relief against the Department of Justice and the Securities and Exchange Commission. Both defendants moved to dismiss under Fed.R.Civ.P. 12(b)(1) and (b)(6). The District Judge granted the motions but did not specifically state the grounds for the decision. We affirm.

*The Allegations in the Complaint*

Dresser's complaint traces the recent history of its dealings with the SEC and the Justice Department concerning these "questionable foreign payments". As early as January 1976, Dresser personnel met with members of the SEC staff and voluntarily agreed to conduct an inquiry to determine the nature and amount of any such payments made by its employees. At this meeting Dresser indicated its deep concern for maintaining the confidentiality of any documents that might be examined by the SEC staff with reference to the payments. A key allegation of the complaint is that:

In response to Dresser's concern for the protection of the confidentiality of such documents, the then Director of the SEC's Division of Corporation Finance expressed the SEC's intention to preserve the confidentiality of Dresser's investigatory documentation reflecting the identities and locations of certain Dresser employees located overseas. In addition, one of the counsel for the SEC did in fact, subsequent to said meeting, make specific representations as to the procedures which would be followed in the event the staff deemed a review of documents underlying Dresser's special inquiry necessary. Such procedures included a commitment that, if it was necessary to examine documents at all, the examination of documents would be conducted off the SEC premises without making copies of any examined documentation and without taking any notes.

Dresser then conducted an inquiry into these matters, questioning numerous employees and examining countless corporate records. It found no domestic payments of a questionable nature, but it did uncover evidence of some "questionable foreign payments". These payments allegedly amounted to less than one-tenth of one percent (0.1%) of Dresser's sales in any year, and the aggregate business related to such payments was, according to Dresser, "immaterial". Certain of these payments had been made because of extortionate threats by foreign nationals against Dresser employees abroad.

In December 1976, the SEC began to make demands for certain of Dresser's files relating to the special inquiry, although when the complaint was filed no formal demand, as by subpoena, had been served upon Dresser. In the meantime, the Department of Justice had also requested, again on an informal basis prior to the filing of the complaint, certain of Dresser's files. The complaint states that both the SEC and the Department of Justice had represented to Dresser that the agencies were unaware of any violations of United States law committed by Dresser. Dresser also alleges that it is unaware of any violations of the law committed by any of its employees connected with these "questionable foreign payments."

Dresser further alleges that the SEC has turned over its files to the Justice Department Task Force and will continue to turn over to the Task force any and all further information collected relative to these questionable payments, "without regard to the concern of Dresser that the release of such information jeopardizes the safety of certain of its employees." The complaint also charged that a subpoena for the documents sought by the Justice Department "may well be imminently issued." Finally, Dresser asserted that there are outstanding Freedom of Information Act requests for all documents that it might supply to the Department of Justice and that the Department "has refused or been unable to assure" Dresser that any information turned over to the Department would not be disclosed pursuant to these standing FOIA requests.

In addition to the basic facts, as thus related, the complaint mentioned several legal theories in support of Dresser's claims for relief, which included prayers for: an injunction, a declaratory judgment, the perpetuation of certain evidence and testimony, and a protective order. More specifically, Dresser asked the Court to enjoin the defendant

> from taking any further action in connection with its investigation of Dresser, including but not limited to, issuance of orders of investigation or Grand Jury subpoenas or the assessment of civil or criminal penalties, for plaintiff's failure to produce that confidential information requested or subpoenaed by the [Department of Justice] or SEC and pertaining to the special inquiry conducted by Dresser.

In addition, Dresser asked that the SEC be enjoined from delaying its approval of registration statements or proxy statements filed by Dresser.

Dresser also sought a declaratory judgment that the collection of information by either of these agencies with respect to the identities of foreign persons and countries involved in these questionable payments violated the Privacy Act of 1974, 5 U.S.C. § 552a. A declaratory judgment was likewise sought that the agencies abused their discretion in failing to assure Dresser that such matters are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552, and that the agencies would not release such material, such abuses being within the scope of the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

In the event that the court found the requested injunctive and declaratory relief inappropriate, Dresser requested, in extremely detailed form, a protective order and the perpetuation of certain evidence. In essence, Dresser desired to deposit all of its records, deposition testimony, and other evidence relating to such payments with the court, which would then control access to the evidence under strictly limited conditions. In Dresser's view, court control would guarantee the confidentiality of the evidence and protect its employees from the reprisals which might occur if the information became public.

### The Dismissal of the Complaint

Although the District Court did not specify whether the dismissal of the complaint was predicated upon a lack of subject matter jurisdiction or for failure to state a claim upon which relief could be granted, we are of the opinion that the complaint was properly dismissed, for the reasons set forth below.

In reaching this conclusion we are mindful that a complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Cook & Nichol, Inc. v. Plimsoll Club*, 5 Cir. 1971, 451 F.2d 505, 506–507.

We affirm, with one exception, the dismissal of Counts I, II, and III as to both the SEC and the Justice Department on the grounds that these allegations are not ripe for decision. The exception is that the dismissal of Count I as to the Justice Department is affirmed for failure to state a claim. Count I, broadly construed and interpreted on this 12(b)(6) motion, alleges the existence of a contract between the SEC and Dresser, under which Dresser agreed to undertake an investigation of itself and the SEC agreed, among other things, "to preserve the confidentiality of Dresser's investigatory documentation reflecting the identities and locations of certain Dresser employees located overseas." Count II alleges that the SEC has exceeded its statutory authority to order an investigation of Dresser.[1] Count III asserts that the agencies' demands for the production of certain evidence indicate that "the defendant seeks to summarily deprive plaintiffs and its employees of their rights to equal protection and due process secured to them by the Fifth Amendment", and also constitute an invasion of rights to privacy secured by the Fourth Amendment.

In our opinion, Dresser has failed to present issues that are ripe for judicial review under the criteria spelled out in *Ab-*

*bott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Most basically, the ripeness doctrine requires courts to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Among the factors to be considered are: (1) whether the issues are purely legal; (2) whether the issues are based on final agency action; (3) whether the controversy has a direct and immediate impact on the plaintiff; and (4) whether the litigation will expedite, rather than delay or impede, effective enforcement by the agency. *Id.*, 387 U.S. at 149–54, 87 S.Ct. 1507.

Each of the *Abbott Laboratories* factors militates against judicial review at this time. First, the issues are not purely legal. Dresser has constantly asserted that it needs extensive discovery in order to develop its claims, and it appears that an extensive factual inquiry would be necessary in order to ascertain the existence of the implied contract with the SEC. As for the constitutional and statutory claims, they appear rather nebulous at best and are most definitely not strictly legal. Second, there is no "final" agency action involved here. The complaint alleges that the SEC and the Justice Department have made informal demands for certain documents, but these are not final agency actions and Dresser is apparently under no legal obligation to comply. It faces no sanctions for noncompliance at this point, and until it turns over the documents there is certainly no danger that the agencies will disclose that which they do not have. Third, we fail to discern the direct and immediate impact upon Dresser which will be visited upon it if judicial review is postponed. It can, and in

1. Although we emphasize that we place our decision on the dismissal of Count II on ripeness grounds, we think that there is a substantial question as to whether the dismissal could not be affirmed for the failure to state a claim upon which relief could ever be granted. Even if the SEC has indicated to Dresser that it has no knowledge that any laws have been broken, the Commission is empowered by statute to investigate and determine for itself whether any laws have been violated. This power is analogous to that of the Grand Jury, and the

SEC "can investigate merely on [the] suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–643, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950). Judicial supervision of agency decisions to investigate might hopelessly entangle the courts in areas that would prove to be unmanageable and would certainly throw great amounts of sand into the gears of the administrative process.

fact already has,[2] litigated these issues in subpoena enforcement proceedings, and the only "hardship" identified by Dresser is the possibility that it may not have the broad discovery rights in those proceedings that it might have in this case. In a case such as that now before us, such a difference, even if it exists, does not constitute a "hardship" sufficient to warrant pre-enforcement judicial review of non-final agency action. *See A. O. Smith Corp. v. FTC*, 3 Cir. 1976, 530 F.2d 515, 526–27. Finally, this litigation would most certainly delay or impede effective enforcement by the agencies. Both the SEC and the Department of Justice might decide that their scarce investigative and prosecutorial resources could be better invested elsewhere, and they might decide to drop the investigations of Dresser entirely. In any case, the courts should not abet the process by making the agencies defend against a plaintiff that they might not even consider worth investigating. The fact that both agencies are now pursuing separate actions against Dresser in the District of Columbia does not influence our decision, for we must concern ourselves with the impact on the parties of allowing this pre-enforcement litigation to continue or die on the vine.

Therefore, on the ground that the issues presented are not ripe for judicial review, we affirm the dismissal of Counts I, II, and III as to the SEC and Counts II and III as to the Department of Justice.[3]

■ Even if Count I could be construed to allege the existence of a contract between Dresser and the SEC which would purport to bind the Department of Justice not to investigate Dresser, not to issue Grand Jury subpoenas, and not to assess civil or criminal penalties, such a contract would not be enforceable because neither the SEC nor any of its agents possess the authority to make such agreements.

■ It is well established that the federal government will not be bound by a contract or agreement entered into by one of its agents unless such agent is acting within the limits of his actual authority. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Posey v. United States*, 5 Cir. 1971, 449 F.2d 228, 234; *Jackson v. United States*, Ct.Cl.1978, 573 F.2d 1189, 1197–98. As the Supreme Court stated in the *Merrill* case:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. 332 U.S. at 384, 68 S.Ct. at 3.

If the rule were otherwise, a minor government functionary hidden in the recesses of an obscure department would have the power to prevent the prosecution of a most heinous criminal simply by promising immunity in return for the performance of

---

**2.** On May 19, 1978, in an unreported opinion, District Judge Parker in the District of Columbia ordered Dresser's Chairman of the Board to comply with a grand jury subpoena. Dresser raised and litigated substantially all of the claims raised in the case now before us, and Judge Parker rejected all of them on the merits. On June 30, 1978, District Judge Flannery denied Dresser's motion to quash an SEC subpoena and also rejected substantially all of the arguments that Dresser presents in the instant case. *SEC v. Dresser Industries, Inc.*, 453 F.Supp. 573 (D.D.C.1978). The parties have extensively briefed the question of whether Dresser is now collaterally estopped to litigate identical issues in this case now that its claims have been adversely decided in other cases, but our disposition of the case makes it unnecessary for us to reach this question.

**3.** To the extent that the complaint may be fairly read to allege the existence of coordinated civil and criminal investigations, a claim which might be cognizable under *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), we also find that such a claim is not ripe for adjudication in this case. *Cf. United States v. Fields*, 2 Cir. 1978, 592 F.2d 638.

some act which might benefit his department. Such a result could not be countenanced.

█ In general, the conduct of litigation in which the United States is a party is reserved to officers of the Department of Justice, under the direction of the Attorney General. 28 U.S.C. § 516. More specifically, the United States Attorneys have the responsibility to prosecute all offenses against the United States, "[e]xcept as otherwise provided by law." 28 U.S.C. § 547. The decision to prosecute is largely unreviewable by the courts. *United States v. Cox*, 5 Cir. 1965, 342 F.2d 167, *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). Furthermore, courts have held that not even a United States Attorney can bind his counterpart in another district to dismiss an indictment, *United States v. Boulier*, 359 F.Supp. 165, 170–71 (E.D.N.Y.1972), *aff'd* 2 Cir. 1973, 476 F.2d 456, *cert. denied*, 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973); and that even prosecutors have no power to grant immunity in the absence of a statute specifically conferring it, *United States v. Gorham*, 1975, 173 U.S.App.D.C. 139, 523 F.2d 1088, 1096.

No statute authorizes agents of the SEC to grant immunity from prosecution or to curtail the prosecutorial discretion of the Department of Justice and United States Attorneys. In fact, both the Securities Act of 1933 and the Securities Exchange Act of 1934 expressly provide that the Commission may transmit evidence of criminal wrongdoing to the Attorney General, who may institute the necessary criminal proceedings. 15 U.S.C. §§ 77t(b) and 78u(d). Since the SEC's agents lacked actual authority to contractually limit the prosecutorial function of the Department of Justice, any such agreement with Dresser would be unenforceable.[4] Cf. *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976) (Civil Service Commission regulation held invalid because not based upon considerations properly entrusted to that agency).

█ Count IV of the complaint sought a declaratory judgment that the demands for information by the SEC and the Justice Department violated the Privacy Act of 1974, 5 U.S.C. § 552a. Although the complaint incorrectly alleged that jurisdiction existed under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), the Privacy Act does contain an explicit grant of jurisdiction to federal district courts, *see* 5 U.S.C. § 552a(g). Dresser, however, is without standing to pursue this issue because, being a corporation, it is not an "individual" as defined in the Privacy Act. 5 U.S.C. § 552a(a)(2) defines an "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence." The legislative history leaves no room for debate on this subject. The Senate Report indicates that Congress, by using this definition, intended to distinguish "between the rights which are given to the

4. This question of actual authority readily distinguishes the principal cases relied upon by Dresser. In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the prosecutor, in return for a guilty plea, agreed not to recommend a sentence to the court. However, at the time of sentencing, a new prosecutor, unaware of the prior bargain, recommended the maximum sentence, which the trial judge ultimately imposed. The Supreme Court found that the defendant was entitled to the benefit of his plea bargain and remanded the case to the New York courts for reconsideration. In *Santobello*, there was no question that the first prosecutor possessed actual authority to strike the bargain with the defendant, and the Court did not hesitate to order that the bargain be kept.

Similarly, in our cases of *Geisser v. United States*, 5 Cir. 1975, 513 F.2d 862 (*Geisser I*), and *Geisser v. United States*, 5 Cir. 1977, 554 F.2d 698 (*Geisser II*), there was no question that the prosecutor had actual authority to bargain with the defendant and to commit the Department of Justice to use its "best efforts" to prevent extradition. *See ibid.*, 554 F.2d 703. We did not conclude that the prosecutors had guaranteed the defendant she would not be extradited. Such a guarantee, in view of the mandatory terms of the extradition treaty with Switzerland, might not have been within the authority of the Department of Justice attorneys to make.

citizen as an individual under this Act and the rights of proprietorships, businesses and corporations which are not intended to be covered by this Act." S.Rep.No.1183, 93d Cong., 2d Sess. 79, *reprinted in* [1974] U.S. Code Cong. & Admin.News, pp. 6916, 6993. We hold that Dresser lacks standing to litigate any claims which its employees might have under the Privacy Act. *See Raven v. Panama Canal Co.,* 5 Cir. 1978, 583 F.2d 169, 170–71; *Stone v. Export-Import Bank of United States,* 5 Cir. 1977, 552 F.2d 132, 136–37 & n. 7; *Shermco Industries v. Sec. of the Air Force,* 452 F.Supp. 306, 314–15 (N.D.Tex.1978).

 Count V of the complaint sought a declaratory judgment that the refusals of the SEC and the Department of Justice to acknowledge the applicability of certain exemptions from the disclosure requirements of the Freedom of Information Act, 5 U.S.C. § 552, constitute abuses of discretion proscribed by the Administrative Procedure Act, 5 U.S.C. §§ 701–706. In the recent case of *Chrysler Corp. v. Brown,* —— U.S. ——, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), the Supreme Court unanimously held that the Freedom of Information Act does not afford a person or an entity a right to enjoin agency disclosure of information. Jurisdiction to review agency action under the APA is found in 28 U.S.C. § 1331. *See Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). 5 U.S.C. § 704 subjects to judicial review only those agency actions which are "made reviewable by statute" or which are "final", however. This is not a jurisdictional requirement, but rather an exhaustion of administrative remedies requirement, subject to a few carefully limited exceptions. As such, it performs a function similar to the judicial doctrine of ripeness by postponing judicial review. Since the agencies' actions in this case are not "reviewable by statute" and since there has been no "final" decision to disclose the information which Dresser wishes the agencies to keep confidential, the exhaustion requirement of the APA precludes judicial review to determine whether, under 5 U.S.C. § 706(2)(A), the agency decision to disclose pursuant to the Freedom of Infor-

mation Act is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Georator Corp. v. EEOC,* 4 Cir. 1979, 592 F.2d 765.

Count IV of the complaint failed to state a claim upon which relief could be granted.

 Count VI petitioned the District Court to perpetuate certain testimony pursuant to Fed.R.Civ.P. 27(c). There need not be an independent basis of federal jurisdiction in a proceeding to perpetuate, but it must be shown that in the contemplated action, for which the testimony is being perpetuated, federal jurisdiction would exist and thus is a matter that may be cognizable in the federal courts. *Arizona v. California,* 292 U.S. 341, 347, 54 S.Ct. 735, 78 L.Ed. 1298 (1934). Because we have concluded that all the other counts in the complaint were properly dismissed, we shall assume, for present purposes, that the petition to perpetuate met the requirements of Rule 27, and, in particular, the requirement that Dresser "expects to be a party to an action cognizable in a court of the United States but is presently unable to bring it or cause it to be brought," Fed.R.Civ.P. 27(a)(1). We also shall assume, but only for present purposes, that the conclusory allegations of the complaint that the testimony and documents sought to be perpetuated "may become unavailable" satisfy the requirement that the taking of testimony is made necessary by the danger that it may be lost by delay. *Arizona v. California, supra,* 292 U.S. at 347–48. *See generally* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2072 (1970). We hold, however, that this controversy is now moot because the contemplated actions have already taken place in the form of subpoena enforcement proceedings in the District of Columbia. Any testimony which might have been lost due to the delay in the bringing of such actions by the government has either been already given to a court of competent jurisdiction or it has been lost. We therefore affirm the District Court's dismissal of this count on the grounds that the question presented is now moot.

Count VII sought a protective order pursuant to Fed.R.Civ.P. 26(c). Since all other claims for relief were properly dismissed, no case or controversy exists in which a party can obtain discovery or seek a protective order under the general discovery provisions of Rule 26. Therefore, this count was properly dismissed.

AFFIRMED.