Cayo RAMIREZ

v.

**TEXAS LOW–LEVEL RADIOACTIVE WASTE DISPOSAL AUTHORITY and Richard L. Jacobi, General Manager; Texas Natural Resource Conservation Commission and Jeff Saitas, Executive Director.**

No. EP–98–CA–407–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Nov. 25, 1998.

C.R. Kit Bramblett, El Paso, TX, for Plaintiffs.

Dan Morales, Attorney General of Texas, Austin, TX, Jorge Vega, First Assistant Attorney General, Austin, TX, David A. Talbot, Jr., Deputy Attorney General for Litigation, Austin, TX, Toni Hunter, Chief, General Litigation Division, Austin, TX, Christopher Johnson, Assistant Attorney General, General Litigation Division, Austin, TX, for Defendants.

***MEMORANDUM OPINION AND ORDER***

BRIONES, District Judge.

On this day, the Court considered Defendants' Motion to Dismiss filed on October 28, 1998, in the above-captioned cause. Plaintiff filed his Response on November 17, 1998, to which Defendants filed their Reply five days later. After due consideration, the Court is of the opinion that Defendants' Motion should be granted for the reasons set forth below.

**Facts**

The Texas Low–Level Radioactive Waste Disposal Authority ("Authority") is a state-created agency managed and controlled by a six-member board of directors ("Board").

The Authority is responsible for assuring the disposal capability for specific categories of low-level radioactive waste generated in Texas. *See* Tex. Health & Safety Code Ann. §§ 402.002(c) and 402.013 (West 1992 & Supp.1998). Toward that end, the Texas legislature vested the Authority with jurisdiction over the selection, development and operation of one site for the disposal of low-level radioactive waste within the state, and has mandated that any site chosen by the Authority must be located in Hudspeth County, Texas, but only after the Authority has conducted studies to determine which areas in that county are more suitable than others to accommodate the state's growing needs for low-level radioactive waste disposal. *See id.* §§ 402.051, 402.081 and 402.0921. Neither the Authority nor any other entity, however, is authorized to operate a disposal site unless it has first obtained an operating license from the Texas Natural Resource Conservation Commission ("TNRCC"), which has sole authority to issue a license to operate a disposal site in the state of Texas. *See id.* § 402.1511. Finally, should the TNRCC deny an entity's application for a license, the Board is required to select an alternative site within Hudspeth County suitable for the disposal facility. *See id.* § 402.155.

Pursuant to the powers granted to it by the Texas legislature, the Authority recently began reviewing Hudspeth County for a suitable site for a disposal facility. Having concluded that an area in Hudspeth County near Sierra Blanca, Texas, would be most suitable for constructing its facility, the Authority began preparing its application to the TNRCC for a license to commence operations. As a result of the Authority's proposed selection, but before the TNRCC approved the Authority's application for a waste disposal license, Plaintiff, a resident of Hudspeth County who resides within five miles of the proposed site, filed his Original Complaint for Declaratory Judgment and Injunctive Relief, on September 30, 1998.

Plaintiff alleges that the Authority's reasons for choosing Sierra Blanca as the proposed site violate Title VI, 42 U.S.C. § 2000(d), because they are based on the national origin of the residents in Sierra Blanca area. According to Plaintiff, the Authority chose the area near Sierra Blanca "precisely because ... the Hispanic population in Hudspeth County and around Sierra Blanca ... would not be sufficiently knowledgeable or financially empowered to mount [a] meaningful response." Alternatively, Plaintiff argues that the Authority's construction of a low-level radioactive waste disposal facility in the Sierra Blanca area will have a disproportionate adverse impact on Hispanic residents due to the fact that the majority of the residents in that area are of Hispanic descent.

On October 22, 1998, the TNRCC denied the Authority's request for a license to operate a facility in the Sierra Blanca area. On October 28, 1998, Defendants filed their Motion to Dismiss Plaintiff's Complaint, alleging that the Court lacks subject-matter jurisdiction to adjudicate Plaintiff's claim. In particular, Defendants contend that because TNRCC approval is required before an entity may legally operate a low-level radioactive waste disposal facility, and because the TNRCC denied the Authority's request. Plaintiff's case is not ripe for adjudication. On November 17, 1998, Plaintiff filed his Response, arguing that dismissal of his suit is premature. Plaintiff avers that because the Authority may appeal the TNRCC's decision, the Court should "abate the [instant] case until it is clear whether ... the Authority is going to continue to try to license the Sierra Blanca ... site." After a careful review of the pleadings before it, the Court finds that Plaintiff's case is not ripe for adjudication and consequently should be dismissed.

### Discussion

In general, ripeness concerns subject matter jurisdiction. *See Valley v. Rapides Parish School Board,* 145 F.3d 329, 331 (5th Cir.1998). The "[r]ipeness doctrine reflects the determination that courts should decide only a 'real, substantial controversy,' not mere hypothetical questions." 13A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 3532.2 (West 1984 & Supp.1998). "The ... doctrine is necessary to prevent courts from becoming entangled in abstract disputes by adjudicat-

ing an issue prematurely." *American Medical Association v. R. Bowen, M.D.*, 857 F.2d 267, 272 (5th Cir.1988) (citing *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985)). Moreover, "[t]he doctrine discourages the litigation of contingent events that either may not occur at all or, at least, may not occur as anticipated." *Id.*

■ In evaluating whether a case is ripe for judicial review, a court is required to address "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Dresser Industries, Inc., v. United States*, 596 F.2d 1231, 1235 (5th Cir.1979). Thus, the evaluation of a suit's ripeness for adjudication requires a two-step inquiry which concerns both a constitutional requirement and prudential concerns. *See Valley*, 145 F.3d at 332.

First, "[a] federal court must find that Article III standing requirements are met." *Id.* To establish standing, the party invoking federal jurisdiction bears the burden of establishing that he or she has suffered,

> "an (1) 'injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) causation, meaning that the injury is 'fairly traceable to the challenged action of the defendant'; and (3) redressability, meaning that 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"

*Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)).

Second, "once the constitutional showing has been made, a court must satisfy prudential concerns by balancing the need to expend its resources on a case it may never need to decide against the expense and hardship to the parties of having a delayed adjudication." *Id.* "The court must make sure that a sufficient factual basis, and necessity on the part of the parties, exist to justify the expenditure of judicial resources." *Id.*

■ Here, the Court need go no further than a review of the constitutional component of the ripeness analysis to conclude that Plaintiff's case is not ripe for adjudication. Specifically, the Court concludes that because Plaintiff has not satisfied his burden of establishing that the threatened injury of which he complains is sufficiently "imminent," he lacks standing to invoke the Court's jurisdiction. First, Plaintiff concedes that no entity may operate a low-level radioactive waste disposal facility in the state of Texas without a license to do so from the TNRCC. Plaintiff also admits that the TNRCC denied the Authority's application for a license to operate such a facility in the Sierra Blanca area. However, because of the future litigation options available to the Authority to reverse the TNRCC's decision, Plaintiff would have this court conclude that his case is ripe for adjudication. This the Court cannot do.

While the TNRCC may eventually change its mind and grant the Authority a license to operate a waste disposal facility somewhere in Hudspeth County at some point in the future, there is no reason to believe that that time will come anytime soon, if ever. Moreover, there is no reason to believe that if the decision to license a low-level waste facility in Hudspeth County eventually occurs, the site chosen will be near the Sierra Blanca area. As such, the Court finds Plaintiff's claim of threatened injury too remote to satisfy the requirements of Article III standing.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED WITHOUT PREJUDICE.**

### *FINAL JUDGMENT*

On this day, the Court granted Defendants' Motion to Dismiss filed on October 28, 1998, in the above-captioned cause. The Court now enters its final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

Accordingly, **IT IS HEREBY ORDERED** that the above-captioned cause is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that all other pending motions, if any, are **DENIED AS MOOT.**