FLAUM, Circuit Judge.
Toward the end of 1980, Gary Williams agreed to sell his one-half interest in L & S Industries to the company and to Lawrence Stefan. L & S Industries executed a promissory note to cover its $750,000 obligation to Williams. Stefan and his wife Judith guaranteed the obligations of L & S Industries by delivering to Williams a guaranty on the L & S promissory note. About a year after this transaction, L & S Industries filed for protection under Chapter 11 of the Bankruptcy Act. In order to pursue collection on the note, Williams initiated the first adversary complaint against L & S Industries in the bankruptcy court. L & S Industries responded by filing counterclaims and affirmative defenses against Williams. Neither of the Stefans was named in the first complaint.
In 1983, Williams filed suit against the Stefans in state court in order to enforce the guaranty. L & S Industries intervened in the state court action. Both the Stefans and the company asserted the same counterclaims and affirmative defenses as had been asserted in the first adversary proceeding. The bankruptcy proceeding was converted to Chapter 7, and the trustee replaced L & S Industries in the bankruptcy and state proceedings.
Early in 1988, Williams’s Executor filed a motion for summary judgment in the first adversary proceeding.[1] Because the assets of the estate had been virtually exhausted, the trustee moved to abandon the counterclaims and affirmative defenses. The bankruptcy court dismissed the counterclaim with prejudice, ordered the trustee to abandon any claims pending on behalf of L & S Industries in any other court, and allowed the Executor’s claim against L & S Industries on the note. After the first adversary proceeding was closed, Williams moved in state court for a dismissal of the Stefans’ counterclaims and affirmative defenses on the basis of res judicata. The state court considered the motion twice. First, the state court ruled that all defenses derivative of the claims of L & S Industries should be struck, although the court did not attempt to determine which of the defenses were derivative and which were personal. On subsequent consideration, the state court continued the motion with respect to any derivative claims, still without distinguishing the derivative from the personal claims.
In 1990, the Executor returned to the bankruptcy court and initiated a second adversary proceeding by filing for declarative and injunctive relief. She requested the bankruptcy court to enjoin the Stefans from asserting their counterclaims and affirmative defenses in state court. The Ste-fans answered and filed a motion for abstention. In its decision the bankruptcy court denied the motion for a preliminary injunction and elected to abstain from consideration of the permanent injunction, 122 B.R. 987, and the Executor appealed. The district court affirmed the decision of the bankruptcy court, 133 B.R. 119, as do we.
I.
This appeal raises a challenging question regarding the standard of review governing the denial of a motion for a preliminary injunction.[2] Numerous opinions of this *932 court have elaborated the appropriate judicial methodology for reviewing the grant or denial of a preliminary injunction. See, e.g., Thornton v. Barnes, 890 F.2d 1380 (7th Cir.1989); Ping v. National Education Ass’n, 870 F.2d 1369 (7th Cir.1989); Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429 (7th Cir.1986); American Hospital Supply Corp. v. Hospital Products, Ltd., 780 F.2d 589 (7th Cir.1986); Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380 (7th Cir.1984). While the particular semantic characterization of the standard of review has alternated between formulaic and functional, the flexible nature of the inquiry has been constant.
In determining whether to grant a preliminary injunction, a district court typically considers whether the moving party (1) has an adequate remedy at law, (2) will suffer irreparable harm if the injunction is not issued, and (3) has some likelihood of success on the merits. Normally, our review of the district court’s determination is tailored to the various functions that the district court performs in evaluating whether to grant or deny a preliminary injunction. As a consequence, appellate review will vary, based on the nature of the lower court decision: We apply the clearly erroneous standard to any factual determinations; necessary legal conclusions are subject to de novo review. Lawson, 782 F.2d at 1437. The same principles of flexible review would apply to the review of a bankruptcy court’s ruling on a preliminary injunction.
However, in order to issue a preliminary injunction, a court sitting in bankruptcy need not meet all three requirements outlined above. The Bankruptcy Act provides the court with broad equitable powers to preserve its own jurisdiction: “The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” 11 U.S.C. § 105(a). Accordingly,^ bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to demonstrate an inadequate remedy at law or irreparable harm. See In re Chicago, Milwaukee, St. Paul and Pacific R. Co., 738 F.2d 209, 213 (7th Cir.1984); In re Chateaugay Corp., 93 B.R. 26, 29 (S.D.N.Y.1988). Of course, the moving party must still establish a likelihood of success on the merits.
In assessing the likelihood of success for this case, our inquiry is along a somewhat different tack. The Executor is seeking a preliminary injunction in order to give its previous judgment preclusive effect against non-parties. In denying the Executor’s request, the bankruptcy court ruled that the Stefans were not parties in interest to its decision in the first adversary proceeding. Thus, the principal consideration in evaluating the request for injunc-tive relief, which would confirm the res judicata effect in state court of the bankruptcy court’s dismissal, is whether privity exists between L & S Industries and the Stefans.
Privity is an elusive concept. It is a descriptive term for designating those with a sufficiently close identity of interests. Of course, this definition reveals very little about the kinds of relationships that result in res judicata or, for that matter, the nature of our review. Opinions have varied as to whether privity is a question of fact, Vulcan, Inc. v. Fordees Corp., 658 F.2d 1106, 1109 (6th Cir.1981), cert. denied, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982), or a question of law. Southwest Airlines Co. v. Texas Int’l Airlines, Inc., 546 F.2d 84, 95 (5th Cir.), cert. denied, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977) (privity “represents a legal conclusion rather than a judgmental process”).
This confusion apparently stems from the fact-intensive nature of the inquiry. As one treatise has noted,
*933 “[a]s the preclusive effects of judgments have been expanded to include nonparties in more and more situations, ... it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper. Modern decisions search directly for circumstances to justify preclusion.”
18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4449, at 418-19 (1981). In other words, the legal authority of a party to act on behalf of a non-party in previous litigation may not be easily characterized as factual or legal. For example, a question of whether a non-party effectively agreed to be represented in previous litigation — such as by implied consent or by conduct — would involve the sort of factual inquiry by a district court that we would review for an abuse of discretion. See, e.g., Vulcan, 658 F.2d at 1109-1110. On the other hand, a question of whether representation of a non-party falls within some pre-existing relationship — as defined by statute, for example — would call for the kind of legal conclusion that we would review de novo. See, e.g., Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 689 (7th Cir.1986) (en banc). The question of privity is therefore particularly amenable to a sliding-scale standard of review. Hence, because the present case requires a legal conclusion on the issue of privity between a guarantor and a trustee, our review is de novo.
II.
Because of the relationship between the Stefans and L & S Industries, the Executor reasons that the dismissal with prejudice by the bankruptcy court of the claims advanced by L & S Industries should bar the Stefans from pursuing them in state court. She contends that the counterclaims and affirmative defenses asserted by the Ste-fans as shareholders and guarantors belong to the corporation as the debtor and principal. Much of the support for this contention appears to lie in the fact that the claims put forward by the debtor and the Stefans are identical. The Executor concludes that privity should preclude the Stefans from bringing the same claims in another forum. This privity predated the bankruptcy proceedings and endured when L & S Industries became the debtor-in-possession. After the conversion to a Chapter 7 proceeding, the trustee stepped into the shoes of L & S Industries. As a result,.the trustee would be in privity with the Stefans as well. Once the bankruptcy judge dismissed with prejudice the counterclaims and affirmative defenses in bankruptcy and ordered the trustee to abandon them in state court, the Executor argues that res judicata bars the Stefans — as shareholders and guarantors — from raising them in state court against her.
Although she never specifically argues virtual representation, the Executor appears to be asserting that L & S Industries is the virtual representative of the Stefans in their capacities as shareholders and guarantors. Under the doctrine of virtual representation, “ ‘a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.’ ” Kerr-McGee Chemical Corp. v. Hartigan, 816 F.2d 1177, 1189 (7th Cir.1987) (quoting Aerojet-General Corp. v. Askew, 511 F.2d 710, 714 (5th Cir.1975)). According to the Executor, this representation creates privity and should be the basis for a finding of res judicata. See Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (“Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.”). ,
Relying on Commodity Futures Trading Comm’n v. Weintraub, 471 U.S. 343, 105 S.Ct.1986, 85 L.Ed.2d 372 (1985), the Executor asserts that privity exists between the trustee and shareholders with respect to any right of action of the corporation that the shareholder seeks to assert derivatively. In Weintraub, the Supreme Court reasoned -that a bankruptcy trustee has the authority to waive a corporation’s attorney-client privilege because the trustee exercises functions analogous to those exercised by management. 471 U.S. at *934 355, 105 S.Ct. at 1994. In other words, the trustee’s fiduciary duty would run to shareholders as well as creditors.
However, privity does not automatically arise from the relationship between a corporation and its shareholders. Some additional link is necessary. For example, the right of a shareholder to bring a derivative suit is based on an existing right of action accruing to the corporation. In other words, the primary right of action sought to be enforced belongs to the corporation. If the corporation asserts this right, principles of preclusion would prevent a shareholder from subsequently asserting that same right.
Although the Executor’s argument is somewhat opaque, she apparently regards the present case as closely analogous to more traditional derivative rights cases. According to the Executor, insofar as the trustee represented the interests of L & S Industries in the counterclaims and affirmative defenses in the first adversary proceeding, the trustee also represented the derivative interests of the Stefans in their identical counterclaims and affirmative defenses. After the bankruptcy court’s dismissal, any assertion of those counterclaims and affirmative defenses by the Ste-fans — either as shareholders or guarantors — would be barred. However, merely asserting that the claims are derivative does not suffice as an additional link.
The Executor additionally assumes throughout her analysis that a shareholder and a guarantor are fungible for purposes of a privity analysis. They are not.
A guarantor promises to answer for the payment of a debt or the performance of an obligation to a creditor (or obligee) upon default by the principal of the payment or performance. In other words, the debtor may not only promise to pay the price himself, but also may add a third person’s additional promise to pay the creditor the price in order to induce the creditor to extend credit. Both promisors are then under a duty to the creditor to render the same performance, and as between the two promisors, it is the debtor rather than the guarantor who should perform. The guarantor’s obligation is secondary to the primary obligation of the principal. In other words, two separate contractual relationships exist — one between the creditor and the debtor, and the other between the creditor and guarantor.
Some of the confusion apparently stems from the fact that the claims of L & S Industries and the Stefans are identical. This identity of claims derives from principles underlying guaranties. As a general rule, a guarantor is not liable to the creditor unless his principal is liable; accordingly, he can plead any defense that the principal might have used if the action had been brought against him. Cf. Very v. Watkins, 64 U.S. (23 How.) 469, 16 L.Ed. 522 (1860); Grommes v. St. Paul Trust Co., 147 Ill. 634, 35 N.E. 820 (1893). Of course, the guarantor cannot take advantage of a defense that is personal to the principal (e.g., ultra vires, insanity, infancy). Similarly, if a creditor has brought an action unsuccessfully against the principal, this is usually a good defense in a later suit against a guarantor. The converse is also generally true: the right of a principal to bring a counterclaim should inure to the guarantor against the creditor, when the guarantor and the principal are both defendants in the same suit.
However, an identity of claims is not equivalent to an identity of interests. And privity here turns on an identification of interests. Only non-party interests adequately represented in a prior proceeding can be subject to res judicata. Therefore, the bankruptcy court’s dismissal of the trustee’s claims could bind the Stefans if he was acting as their virtual representative in the first proceeding. Cf. In re Medomak Canning,. 922 F.2d 895, 901 (1st Cir.1990). Although a bankruptcy trustee is a fiduciary who can represent the rights of creditors, and even certain derivative rights of shareholders, the trustee’s primary responsibility is to the estate. In the present case, representation of the estate may be contrary to the interests of the Stefans as guarantors. Certainly, the interests of a principal and a guarantor are not clearly *935 aligned: If the principal defaults, the guarantor is obliged to perform. It follows that a trustee, as a representative of a bankrupt principal, would also represent interests distinct from those of the guarantor.
Since the Executor has not made a showing of privity between the Stefans and the trustee, res judicata is not available to her. We agree with the conclusion of the bankruptcy court and the district court in this regard. Without privity the Executor cannot establish any likelihood of success on the merits. Therefore, the denial of a preliminary injunction was correct.
III.
In addition to finding no privity on which to base a preliminary injunction, the bankruptcy court elected to abstain from the request for a permanent injunction. Because the bankruptcy court retained core jurisdiction over the matter, it could abstain under the permissive rather than the mandatory Code provision. See 28 U.S.C. § 1834(c)(1).[3] In reaching its decision to abstain, the bankruptcy court considered the absence of a relationship between the state court action and the bankruptcy estate, the fact that the bankruptcy estate was closed, and the interests of the state court in resolving the guaranty claims. Relying on the reasoning of the bankruptcy court, the district court affirmed.
The Executor contends that the district court was clearly erroneous in its decision for two reasons. First, because her claim in the second adversary proceeding related “solely” to 'the enforcement of a bankruptcy court judgment, the Executor asserts that the claim sounded solely in federal law. Second, because that proceeding did not disturb the interests of comity and justice, abstention was unwarranted. The Executor is wrong on both counts.
Although she contends that only federal law is at issue, the Executor has not really identified any federal issues at stake in the enforcement of a guaranty. A federal remedy such as the requested injunctive relief is not the same thing as a federal issue. It is disingenuous to suggest that the motion for this permanent injunction has nothing to do with the merits of the underlying state action or the related counterclaims and affirmative defenses. (If nothing else, the fact that a court must evaluate the likelihood of success on the merits undermines this notion.) In fact, there is no independent basis of federal jurisdiction for the Executor’s claims other than the bankruptcy proceeding itself. The disputes underlying the enforcement of the guaranty — false representation, unfair competition, breach of fiduciary duties, fraud, and violations of the Illinois Business Corporations Act — sound only in state law. There is no other connection between the bankruptcy case and the Executor’s dispute with the Stefans.
Furthermore, arguing that injunctive relief is necessary to effectuate a judgment of the bankruptcy court ignores both the facts and procedural posture of this case. The bankruptcy court dismissed the claims of L & S Industries with prejudice in order to wind up an estate that contained assets sufficient only to pay administrative costs. It had no reason to adjudicate the claim on the guaranty when an identical action was already underway in state court and that action posed no threat to the bankruptcy court’s jurisdiction or the estate. Moreover, at the time of the second adversarial proceeding, the estate was already closed. Consequently, the Executor was asking the bankruptcy court to resolve the pending state action.
Under bankruptcy law the presence of a state law issue is not enough to warrant permissive abstention, but it nevertheless is a significant consideration. See In re Coan, 95 B.R. 87, 90 (Bankr. N.D.Ill.1988); see also In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir.1990) (listing factors to consider for section 1334(c)(1) abstention). In this regard, the bankruptcy court identified several other *936 factors that motivated its decision to abstain. Principal among them was its sense that the Executor, having failed in state court, sought a federal forum to prevent the Stefans from asserting the affirmative defenses and counterclaims. Furthermore, the injunction was the sole relief sought by the Executor. She did not, in fact, present any bankruptcy claims in the second proceeding. Except for the supplemental jurisdiction of the bankruptcy court that allowed the Executor back into federal court, every other consideration for analyzing the injunction points to state court.
The Executor also contends that abstention is improper when the Stefans are allegedly attempting to relitigate claims already decided by the bankruptcy court in the first proceeding. Of course, the finding of an absence of privity does mean that the claims were not litigated with respect to the Stefans as guarantors. Nevertheless, relying on Samuel C. Ennis & Co. v. Woodmar Realty Co., 542 F.2d 45 (7th Cir.1976), cert. denied, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977), the Executor concludes that the bankruptcy court is obliged to enjoin relitigation.
Ennis involved the application of the Anti-Injunction Statute to the judgment of a federal bankruptcy court. In particular, the Ennis court noted the exception to “protect or effectuate” a federal judgment. 28 U.S.C. § 2283. The case, however, is easily distinguishable. In Ennis the bankrupt attempted to overturn distributions adjudicated in the bankruptcy proceedings by pursuing damages in state court. We found that each of the defendants in the state court action was either a party to the bankruptcy proceeding or "participated in that proceeding in some way necessary to the administration of the estate.” 542 F.2d at 49. This conclusion allowed all defendants, including the attorneys for the parties subject to suit in state court, to assert collateral estoppel.
In this case, the Executor cannot make a similar argument. The Stefans were not party to the first proceeding and, as guarantors, were not in privity with the trustee. Moreover, that case was brought under the Anti-Injunction Statute. We held that the lower court was compelled to exercise the jurisdiction conferred by section 2283 in order to effectuate its own prior judgment. Id. at 50. We can find no similar compulsion in the language or purpose of the discretionary abstention statute. See 28 U.S.C. § 1334(c)(1). Therefore, the decision to abstain was not clearly erroneous.
For the foregoing reasons, the decision of the district court is Affirmed.

. Elaine Williams, the wife of Gary Williams and his Executor, was substituted for the plaintiff prior to this 1988 filing.

. Although Circuit Rule 28(k) is not mandatory, neither the permissive language nor the com *932 plexity of a standard ought to deter parties from at least attempting to elaborate the standard of review in their briefs.

. 28 U.S.C. § 1334(c)(1) grants the district court discretion to abstain from hearing a matter related to the bankruptcy proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law.”