Nissei Sangyo America, Ltd. ("Nissei"), filed this declaratory judgment action against Camaro Trading Company, Ltd. ("Camaro"), seeking a declaration that a contract entered into by Nissei and Camaro was void on the basis that Camaro, a Hong Kong corporation, was doing business in Alabama without being qualified to do so.
The procedural history of this case is somewhat complicated. Camaro removed the case to the United States District Court for the Northern District of Alabama on diversity grounds. That court remanded the case to the state courts for lack of federal jurisdiction, specifically finding that Camaro had failed to prove that its principal place of business was somewhere other than Alabama. (C.R.Supp. 56-64.)
On remand to the state court, Camaro filed a motion to compel arbitration pursuant to an arbitration clause in the contract. The trial court denied the motion, and Camaro appealed. Nissei cross-appealed the trial court's denial of its motion for summary judgment. In Camaro Trading Co., Ltd. v.Nissei Sangyo America, Ltd., 577 So.2d 1274 (Ala. 1991), this Court held that the trial court did not err in denying Camaro's motion to *Page 465 
compel arbitration and dismissed Nissei's cross-appeal.
After a nonjury trial in the declaratory judgment action, the trial court declared that the agreement between Nissei and Camaro was void and unenforceable because of Camaro's failure to qualify to do business in Alabama before doing business in this state. Camaro appeals.
The only issue is whether the trial court erred in finding that Camaro was a foreign corporation that was not qualified to do business in Alabama. Therefore, we will discuss the facts relevant to that issue.
On September 1, 1987, Nissei and Camaro executed a "Sales Representative Agreement." According to the agreement, Camaro was to act as Nissei's exclusive sales agent for sales of "Shinwa cassette mechanisms" to the Chrysler Acustar Corporation, located in Huntsville, Alabama. Camaro's obligation under the agreement was to use its "best efforts and skills to sell, promote and generally create a demand" by Chrysler in Huntsville for Shinwa cassette mechanisms. Camaro was to receive a 5% commission on Nissei's sales of the mechanisms to Chrysler. It is undisputed that the agreement was limited to Camaro's representation of Nissei in the sale of cassette mechanisms to Chrysler in Huntsville.
The agreement listed Camaro's address as 1805 University Drive, Huntsville, Alabama 35801. (C.R.Supp. 92-98.) Camaro's letterhead contained an address in Hong Kong and an address in Huntsville. Domer Ishler, who signed the agreement on behalf of Camaro, testified that 90% of the daily operations of the project occurred in Huntsville. (R.T. 56.) Ishler, an Alabama resident, had a power of attorney on Camaro's brokerage account in Alabama and was the signing authority on Camaro's corporate accounts. Chrysler's plant manager testified that Ishler directed and controlled Camaro in Huntsville.[1]
From September 1987 until March 1989, when the agreement was terminated, Nissei issued 20 checks to Camaro at the Huntsville address. It is undisputed that Camaro did not pay tax on its commissions from the agreement. Additionally, Camaro owned and maintained a yacht in Huntsville that it used for entertaining Chrysler executives.
When a trial court, without a jury, hears ore tenus evidence, its findings are presumed to be correct and its judgment based on those findings will not be reversed on appeal unless the appellate court finds it to be not supported by the evidence or to be plainly and palpably wrong, after considering all the evidence and after making all reasonable inferences from that evidence. Spruiell v. Robinson, 582 So.2d 508 (Ala. 1991).
Section 10-2A-247, Ala. Code 1975, provides in pertinent part:
 "(a) All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity. . . ."
This Court has interpreted § 10-2A-247 as follows:
 "The purpose of this section is to provide some power for the State to protect Alabama residents from possible abuse by uncontrolled foreign corporations. This section of the Code is part of a statutory scheme that requires foreign corporations to receive a certificate of authority to do business in this State before transacting business here. See § 10-2A-226 et seq. Failure to secure such a certificate means that the foreign corporation cannot enforce a contract entered into in this State.
§ 10-2A-247(a)."
Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1370
(Ala. 1988). *Page 466 
The initial determination in applying § 10-2A-247(a), is whether the company is engaged in inter state commerce or inintra state commerce. Businesses engaged in inter state commerce are protected by the Commerce Clause of the United States Constitution, U.S. Const., Art. I, § 8, cl. 3, and are immune from the provisions of § 10-2A-247(a). Whether a company is engaging in an intrastate activity, so as to require qualification in this state, is to be determined on a case by case basis.
Clearly, Camaro was engaged in an intra state transaction with Nissei. First, Camaro was Nissei's representative only in Alabama and was its representative with respect to one Alabama customer, namely the Chrysler plant in Huntsville. Second, Camaro had an office and agents and received commission payments in Alabama in connection with the agreement. Third, the daily activity incident to the agreement took place in Alabama. Last, we note that the federal court order remanding the case to the state court for lack of diversity jurisdiction stated that the state court might draw whatever inferences it wished from Camaro's failure to prove that its principal place of business was somewhere other than Alabama. (C.R.Supp. 59-63.)
 "Where a foreign corporation has established a continuing presence in a state for the purpose of 'doing business' within that state, it is fair that [the foreign corporation] be required to comply with qualification statutes."
Diversacon Industries, Inc. v. National Bank of Commerce ofMississippi, 629 F.2d 1030, 1034 (5th Cir. 1980).
 " 'The traditional theoretical basis for permitting states to regulate the commercial affairs of foreign corporations carrying on business within their borders is derived from decisions of the Supreme Court holding that, as the corporation has legal existence only in the state of its creation and is not a citizen within the meaning of the privileges and immunities clause, a state may exclude entirely foreign corporations from engaging in local business. If, through comity, a state chooses to admit a foreign corporation, it may do so on whatever conditions it deems appropriate.' "
Sanwa Business Credit Corp. v. G.B. "Boots" Smith Corp.,548 So.2d 1336, 1339 (Ala. 1989), citing, Sanctions for Failure toComply with Corporate Qualification Statutes: An Evaluation, 63 Colum.L.Rev. 117-19 (1963).
Camaro argues that Kentucky Galvanizing Co. v. ContinentalCasualty Co., 335 So.2d 649 (Ala. 1976), is dispositive of this case. In Kentucky Galvanizing, this Court held that the corporation's activities in Alabama were simply solicitation of orders and delivery incident to that solicitation and, therefore, constituted interstate activity. However, we find the present case to be analogous to SAR Manufacturing Co. v.Dumas Brothers Manufacturing Co., 526 F.2d 1283 (5th Cir. 1976) (applying Alabama law). In SAR Manufacturing, the foreign corporation had expanded its operation by purchasing a warehouse in Alabama, maintaining two vehicles in Alabama, and employing Alabama residents full-time. The court held that the corporation's activities were "localized enough to easily fall under the ambit of a series of transactions which are primarily intrastate and concomitantly the corporation falls under the satrapy of the qualification statutes." SAR Manufacturing, 526 F.2d at 1286.
Based on the foregoing, we cannot say that the trial court's judgment was not supported by the evidence or was plainly and palpably wrong. We affirm.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] When it signed the agreement with Nissei, Camaro also entered into an agreement with Twentieth Century Marketing, Inc. ("TCM"), which provided that TCM was to act as Camaro's representative in Huntsville to perform Camaro's obligations to Nissei. Ishler, the owner of TCM, testified that before the filing of this action Nissei was unaware of Camaro's agreement with TCM. *Page 467