**NISSEI SANGYO AMERICA, LIMITED, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Appeal of CAMARO TRADING COMPANY, LIMITED, Proposed Intervenor–Appellant.**

**No. 93–3859.**

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1994.

Decided July 25, 1994.

Thomas A. Foran, Stephen A. Gorman (argued), Foran & Schultz, Chicago, IL, for Nissei Sangyo America, Ltd.

Gary R. Allen, John A. Dudeck, Jr., Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for U.S.

Francis D. Morrissey, Michael A. Pollard (argued), William M. Sneed, William J. Linklater, Baker & McKenzie, Chicago, IL, for Camaro Trading Co., Ltd.

Before ENGEL,\* BAUER and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

Nissei Sangyo America, an electronics concern, sold cassette players to Chrysler Acustar Corporation, a Chrysler subdivision, located in Huntsville, Alabama. Camaro Trading Company was Nissei Sangyo's exclusive sales agent for the sale of the cassette players, and—according to the Alabama Supreme Court's published opinion in a related suit that Nissei Sangyo brought against Camaro Trading—received a 5 percent commission on the sales. *See Camaro Trading Co. v. Nissei*

---

\* Hon. Albert J. Engel, of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

*Sangyo America,* 628 So.2d 463, 465 (Ala. 1993).

Nissei Sangyo ended up paying over $2 million in commissions to Camaro Trading. It did not withhold taxes from those commission payments. This is problematic because Camaro Trading is a Hong Kong corporation, and domestic corporations that make payments to foreign corporations are typically required to withhold 30 percent of that payment for federal income tax purposes. *See* 26 U.S.C. §§ 1441 & 1442.

In August 1990, the Internal Revenue Service issued a Technical Advice Memorandum asserting that Nissei Sangyo is liable (presumably under these provisions) for failing to withhold taxes from the commissions. Nissei Sangyo's defense is that it believed that Camaro Trading was the alter ego of Dohmer Ishler, an Alabama resident, and that all of its payments to Camaro Trading were remitted back to Ishler.[1] If this is true, it contends, Camaro Trading never beneficially received "income" for the purposes of the tax code, and Nissei Sangyo is relieved of its withholding obligations. Nissei Sangyo's complaint further alleged (and the government, in its answer, admits) that the government was separately prosecuting Ishler for tax fraud.

Camaro Trading's bank records are therefore crucial to Nissei Sangyo's defense in the anticipated tax action. But those records are in the possession of Camaro Trading's bank—the Hong Kong office of The Hong Kong & Shanghai Banking Corporation Limited. Hong Kong law apparently requires that bank records be maintained for only seven years, and the documents at issue here date from as early as September 1987. So in May 1993 Nissei Sangyo filed this suit against the United States—essentially anticipating its tax rebate action against the United States (since the IRS has not yet assessed a tax deficiency against Nissei Sangyo). The essential purpose of the suit was to perpetu-

ate the bank record evidence under Fed. R.Civ.P. 27(c).

In its complaint, Nissei Sangyo asked the district court—pursuant to the Hague Convention—to send a letter of request to Hong Kong judicial authorities, asking for the production of certain documents to Nissei Sangyo's attorneys. The documents were described as those that "identify the recipient(s) of any funds withdrawn, disbursed, or otherwise transferred from Camaro's account(s)" at the Hong Kong and Shanghai Bank. R.O.A. 1, ¶ 4. At oral argument, Nissei Sangyo's attorneys indicated that they would turn over any such documents to the district court. The United States did not oppose Nissei Sangyo's request, and on July 1, 1993 the court issued the letter of request.[2]

On July 9, 1993, the judicial authority in Hong Kong entered an order granting the letter of request, and Camaro Trading was notified of this order on July 12, 1993. The Hong Kong court scheduled a hearing on compliance with the letter on August 3 (which was ultimately continued until November). Camaro Trading's Hong Kong counsel sought to intervene to have the order set aside, but claimed in an affidavit, filed in the district court here, that such an effort would be futile. The affidavit stated that the Hong Kong court would look only at whether the letter of request satisfied Hong Kong's statutory requirements; it would not inquire whether the documents requested were in fact relevant to the suit in the United States. The parties, in their briefs and at oral argument, inform us (though it is not part of the record) that Camaro Trading's application to have the July 9 Hong Kong order set aside was denied on November 25, 1993, and that the first appeal of this decision was also denied. On December 11, 1993, the Hong Kong & Shanghai Bank produced the requested documents, which were delivered to the Supreme Court of Hong Kong, where they remain, pending further order from the Hong Kong court. Camaro Trading has filed

---

1. While this assertion appears to be in some tension with the arguments that Nissei Sangyo seems to have advanced before the Alabama courts, *see Camaro Trading Co.,* 628 So.2d at 464, the judicial estoppel implications of those prior arguments are not now before us.

2. The actual letter of request is somewhat broader than the one sought in the original complaint, though that detail turns out not to matter to our resolution of this appeal.

a notice of appeal with the Hong Kong Court of Appeal, which is scheduled to be heard in July 1994.

Camaro Trading, as soon as it learned of the order granting the letter of request, retained counsel in the United States, and sought, pursuant to Fed.R.Civ.P. 24(a), to intervene in the action in the district court, moving for intervention on October 15, 1993. Nissei Sangyo opposed Camaro Trading's intervention, arguing that Camaro Trading's motion was untimely and that its rights would not be prejudiced by the denial of its motion. In a minute order, the district court ruled in favor of Nissei Sangyo, finding that the intervention motion was "not timely filed" and that denial of the motion "will not impair Camaro Trading's interest" because "[n]o prejudice will inure to Camaro Trading's detriment merely by the perpetuation of the evidence." Order (Nov. 2, 1993). The court added that "[t]his action was brought to insure that evidence would not be destroyed. The preservation of evidence is in every litigant's proper interests." *Id.* Finally, the court noted that "Camaro Trading has available to it the Hong Kong forum in which it may assert its appropriate proprietary and privacy interests." *Id.* Camaro Trading is here appealing the denial of its motion to intervene, which is an appealable final order. *See Marino v. Ortiz,* 484 U.S. 301, 304, 108 S.Ct. 586, 587–88, 98 L.Ed.2d 629 (1988) (per curiam).

## I

Rule 24(a) provides that "[u]pon timely application anyone shall be permitted to intervene in an action … (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

■ Our cases hold—tracking this language—that, in order to have a right to intervene, a plaintiff must (1) make timely application, (2) have an interest relating to the subject matter of the action, (3) be at risk

that that interest will be impaired, "as a practical matter," by the action's disposition and (4) lack adequate representation of the interest by the existing parties. *E.g. Southmark Corp. v. Cagan,* 950 F.2d 416, 418 (7th Cir.1991).

The fourth factor, at least, is undisputed. No one contends that either Nissei Sangyo or the United States has any desire to protect whatever privacy or proprietary interests Camaro Trading may have in its bank records. The other three factors are disputed, however, since the district court found (1) that Camaro Trading's application was untimely, (2) that it lacked an interest in whether relief was granted, since "the preservation of evidence is in every litigant's proper interest," and (3) that its interest would not—as a practical matter—be impaired by the action's disposition in Camaro Trading's absence, because Camaro Trading has an adequate opportunity to argue its case in Hong Kong.

■ The court's determination of the first factor—timeliness—is reviewed for abuse of discretion, *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973), while the other factors are reviewed de novo. *B.H. by Pierce v. Murphy,* 984 F.2d 196, 200 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 2930, 124 L.Ed.2d 680 (1993).

## II

### A

■ The timeliness requirement, rather than imposing a precise time limit, essentially means that an intervenor must "act with dispatch," *Atlantic Mutual Ins. Co. v. Northwest Airlines, Inc.,* 24 F.3d 958, 960 (7th Cir.1994). Intervention is unavailable to the litigant who "dragged its heels" after learning of the lawsuit. *United States v. City of Chicago,* 870 F.2d 1256, 1263 (7th Cir.1989). This test essentially sets out a reasonableness standard: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly. *United States v. South Bend Community School Corp.,* 710 F.2d 394, 396 (7th Cir.

1983), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984). Though the passage of time itself is not the only factor, rather the "most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." 7C Charles Alan Wright, et al., *Federal Practice and Procedure: Civil 2d* § 1916 (1986).

■ Camaro Trading learned of this matter (in Hong Kong) on July 12, 1993, and filed its motion to intervene (in Chicago) three months later, on October 15, 1993. There is no suggestion that Camaro Trading—by exercising reasonable diligence—should have learned of the suit sooner, *compare Atlantic Mutual*, at 961–62 so the only question with respect to timeliness is whether three months is too long.

Nissei Sangyo makes no argument that it was prejudiced by Camaro Trading's "delay." It asserts that it suffered prejudice because Camaro Trading's intervention in Hong Kong delayed its efforts to retrieve the documents it wants, and it also argues that it would suffer prejudice if it were required to litigate this matter both in Chicago and Hong Kong. Neither of these types of prejudice—if they can even be so described—are a function of Camaro Trading's "delay," since Nissei Sangyo would have been burdened in precisely the same manner had Camaro Trading's motion to intervene been filed in July rather than October.

Nor does the passage of three months suggest to us that Camaro Trading was dallying. It was Camaro Trading's lawyer in Hong Kong that learned of the letter of request. Camaro Trading was thus required to hire counsel in the United States, who had to learn about the case (both the facts and the law) and file a motion in the district court. The parties cite to us various cases in which motions to intervene filed after a range of time periods either were or were not considered "timely." But given Camaro Trading's legitimate interest in first making its argument in the Hong Kong court, and then the complexity of finding counsel to intervene in a case nearly half way around the globe, three months does not seem to us to be an unreasonable length of time in which to accomplish this task. Because there is no indication in the record that Camaro Trading was stalling, we find the district court's determination that Camaro Trading's motion was untimely to be an abuse of its discretion.

## B

■ As to the second factor, whether the potential intervenor has an interest in the subject matter of the action, the court apparently concluded that Camaro Trading does not. Its reasoning was that this was simply an action to preserve evidence, and the preservation of evidence is "in every litigant's proper interest."

But granting the letter of request would do more than "preserve" Camaro Trading's bank records. The documents, in which Camaro Trading undoubtedly has a privacy and proprietary interest, *e.g.* 12 U.S.C. § 3401 *et seq.* ("The Right to Financial Privacy Act"), and which Camaro Trading legitimately fears will be used against it in a criminal proceeding, would be turned over—without any limitation—to Nissei Sangyo's attorneys. Courts have some leeway in preventing the widespread release of evidence related to its proceedings, *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978), though Camaro Trading—having been denied the right to intervene—has been unable to seek such a restriction on the use of the records here.[3] Further, the court's contention that the preservation of evidence is always in every litigant's interest seems too lofty a view of litigation reality. Common sense, not to mention the widespread use of document shredders, argues to the contrary. Nor is the district court's observation saved by the qualification—every litigant's *proper* interest—as no one suggests that Camaro Trading was doing anything "improper" in hoping

---

**3.** At oral argument, Camaro suggested that if permitted to intervene, it would consider asking the court to prevent Nissei Sangyo from turning these records over to the government. It is only the possibility that the district court might allow such (or similar) relief, should Camaro be permitted to intervene, that prevents Camaro's appeal from being moot.

that its bank would, following usual practice, destroy its records after the passage of seven years.

Litigants may not destroy evidence. Federal law prohibits "corrupt endeavor[s] to obstruct justice," 18 U.S.C. § 1503, and this provision has been read to forbid the willful destruction of evidence, *United States v. Faudman*, 640 F.2d 20 (6th Cir.1981) (though only when proceedings are pending). Some states (Illinois not among them) have adopted the Model Penal Code approach that eliminates the requirement of a pending proceeding (so long as the destroyer knew that an official proceeding—if not pending—was about to be instituted), Model Penal Code § 241.7. *See generally* Lawrence Solum & Stephen Marzen, *Truth and Uncertainty: Legal Control of the Destruction of Evidence*, 36 Emory L.J. 1085 (1987). But we can discern no legal obligation actively to prevent a third party, like one's bank, from—in the ordinary course of business—destroying records that the government might later want to use against you. While Camaro Trading could not destroy these records, it had every right to hope that its bank would. Because the object of this suit was to prevent the bank from doing so, Camaro Trading had an interest in the litigation. Certainly Camaro Trading is under no legal obligation to disavow such an interest.

### C

■ The court also suggested that Camaro Trading's interests (if it had any) would not be impaired by the court's refusal to allow it to intervene, on the theory that it would be able sufficiently to protect whatever privacy or proprietary interests it might have in its bank records in the Hong Kong courts.

Despite Camaro Trading's asserted interests in its bank records, they are properly discoverable under Rule 27(c) if they are competent records, material to the matter in controversy, that cannot be obtained in ordinary discovery because the plaintiff is not yet in a position to initiate such an action, but that might be lost if the plaintiff cannot now obtain them. *Arizona v. California*, 292 U.S. 341, 347–48, 54 S.Ct. 735, 737–38, 78 L.Ed. 1298 (1934). If permitted to intervene, then,

Camaro Trading would be permitted to argue that the records in question (or some part of them) fall outside these parameters.

The question is whether it is sufficient to allow Camaro Trading to make these arguments, bottomed on federal law, in Hong Kong. Nissei Sangyo argues that Camaro Trading—a Hong Kong corporation—is perfectly able to get a fair hearing on this issue at home. But Camaro Trading's Hong Kong lawyer said in an affidavit that the Hong Kong court, as a reciprocal body, will not look beyond the face of the letter of request in an effort to determine its validity under United States law. But whether or not a court in Hong Kong (or—on appeal—the English Judicial Committee of the Privy Council) would entertain such an argument, the federal district court is surely the preferred forum in which to argue a question under the Federal Rules of Civil Procedure. By relegating Camaro Trading to making its case in Hong Kong, the district court required it to argue issues of international comity, along with the merits of its case. This, it seems clear to us, impairs Camaro Trading's interest.

### III

Because Camaro Trading's motion to intervene satisfied all of the requirements of Fed. R.Civ.P. 24(a)(2), it should have been permitted to intervene in this action as of right. The district court's judgment denying intervention is therefore REVERSED, and the matter REMANDED to the district court for further proceedings consistent with this opinion.