68 F.3d 172
 32 Fed.R.Serv.3d 1415, 104 Ed. Law Rep. 94
 PEOPLE WHO CARE, Larry Hoarde, Chasty Hoarde, et al.,
Plaintiffs-Appellees,
v.
ROCKFORD BOARD OF EDUCATION, School District # 205,
Jacquelyn Confer, Avery Gage, et al., Defendants-Appellees,
Appeal of Michael F. O'BRIEN, Proposed Intervenor-Appellant.
 No. 94-3954.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 11, 1995.
Decided Oct. 12, 1995.
 
 Matthew J. Piers, Jonathan A. Rothstein, Jennifer L. Fischer, Gessler, Flynn, Fleischmann, Hughes & Socol, Robert C. Howard, Kathleen M. Spoto, Joan Matlack, Futterman & Howard, Chicago, IL, Andrew Campos, Rockford Area Hispanic Coalition, Rockford, IL, Eugene Eubanks, Jr., Kansas City, MO, James G. Bradtke (argued), Soule & Bradtke, Chicago, IL, for plaintiffs-appellees.
 Lawrence J. Weiner (argued), Robert H. Ellch, Justino D. Petrarca, Jonathan A. Pearl, Albert L. Himes, George R. Cooper, Scariano, Kula, Ellch & Himes, Chicago, IL, Anthony G. Scariano, Scariano, Kula, Ellch & Himes, Chicago Heights, IL, for defendants-appellees.
 Michael F. O'Brien (argued) Rockford, IL, pro se.
 Before CUDAHY, ESCHBACH and RIPPLE, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 Michael O'Brien contests the legality, under Illinois law, of funding mechanisms adopted to remedy discrimination in the Rockford school system. He filed tax protests in state court in 1992, 1993 and 1994 contesting the taxes levied to fund remedial programs, and now seeks to intervene in the federal discrimination suit against the Rockford Board of Education. The district court found the motion to intervene untimely. We affirm.
 
 I. FACTS
 
 2
 O'Brien attempts to intervene in the lawsuit of People Who Care v. Rockford Board of Education, No. 89 C 20168 (N.Dist.Ill.). This lawsuit was begun in 1989 as a challenge to racially discriminatory practices in the Rockford, Illinois school system. As discovery proceeded in People Who Care, the parties entered into interim agreements to address some of the segregation problems in the schools.
 
 
 3
 The first such interim order was entered in July 1989 in response to People Who Care's preliminary injunction motion. It consisted primarily of modifications to the Board of Education's proposed reorganization plan. The second interim order was entered in April 1991. This interim order, among other things, authorized the Board of Education to issue bonds without referendum and levy taxes under the authority of the Local Government and Governmental Employees Tort Immunity Act (Tort Immunity Act), 745 ILCS 10/1-101 et seq.[1] Following this order, the Board of Education began funding remedial measures under the Tort Immunity Act as the order authorized.
 
 
 4
 These orders did not, however, determine the merits of the case. The merits were not resolved until the spring of 1993, when a hearing was held before Magistrate Judge Mahoney. Following this hearing and the recommendations of the Magistrate, Judge Roskowski entered a Declaratory Judgment and Permanent Injunction Order on March 29, 1994, finding the Board of Education guilty of "system-wide intentional discrimination." Judge Roskowski ordered the Board of Education to eliminate this discrimination, and, at the agreement of the parties, ordered the Magistrate to oversee all remedial matters in this case.
 
 
 5
 In November of 1994 the Board of Education, as ordered by the Magistrate, submitted a proposed remedial decree setting forth its plans for remedying the discrimination. This proposed remedial decree endorses the continued issuance of bonds and levying of taxes without referendum under the Tort Immunity Act. The proposed remedial decree also reaffirms the orders in the interim decrees and continues the funding and implementation of desegregation plans begun in the interim orders.[2] At this time the district court has not acted on the proposed remedial decree.
 
 
 6
 Although this is his first attempt to intervene as a party in this case, O'Brien has contested the funding provisions of these orders in other forums since 1992. O'Brien filed tax protest objections on behalf of himself and others[3] in Illinois state court in 1992, 1993 and 1994 (contesting taxes from 1991, 1992 and 1993). These tax objections contend that the Tort Immunity Act may not be used to levy taxes to fund court-ordered desegregation remedies--the same issue O'Brien raises in this attempt to intervene. Each tax protest was removed to federal court by the Rockford Board of Education (the tax levying unit), and they are now pending in the district court.
 
 
 7
 O'Brien now contends that he should be allowed to intervene in the instant case under Fed.R.Civ.P. 24(a). The district court denied his petition to intervene, finding it untimely.
 
 II. DISCUSSION
 
 8
 In order to intervene as a matter of right under Fed.R.Civ.P. 24(a), "a plaintiff must (1) make timely application, (2) have an interest relating to the subject matter of the action, (3) be at risk that that interest will be impaired, as a practical matter, by the action's disposition and (4) lack adequate representation of the interest by the existing parties." Nissei Sangyo America, Ltd. v. United States, 31 F.3d 435, 438 (7th Cir.1994) (internal citations omitted); see also B.H. v. McDonald, 49 F.3d 294, 297 (7th Cir.1995). "Failure to satisfy any one of these requirements is sufficient grounds to deny an application." United States v. City of Chicago, 798 F.2d 969, 972 (7th Cir.1986), cert. denied, 484 U.S. 1041, 108 S.Ct. 771, 98 L.Ed.2d 858 (1988).
 
 
 9
 The district court determined that O'Brien's action was not timely and that the parties in the case would suffer significant prejudice if an intervention were allowed at this late date. The court also found that O'Brien would not suffer great prejudice from the denial of his motion to intervene, as his concerns could and should be addressed in his pending tax protest cases. We review the timeliness decision for abuse of discretion, while the other factors are reviewed de novo. Nissei, 31 F.3d at 438.
 
 
 10
 The timeliness factor is essentially a reasonableness inquiry, requiring potential intervenors to be reasonably diligent in learning of a suit that might affect their rights, and upon learning of such a suit, to act to intervene reasonably promptly. Nissei, 31 F.3d at 438. However, "[i]ntervention is unavailable to the litigant who 'dragged its heels' after learning of the lawsuit." Id. This circuit has established four factors to be considered in determining if a motion to intervene is timely. They are 1) the length of time the intervenor knew or should have known of his interest in the case, 2) the prejudice to the original party caused by the delay, 3) the resulting prejudice to the intervenor if the motion is denied, and 4) any unusual circumstances. Shea v. Angulo, 19 F.3d 343, 348-49 (7th Cir.1994); Schultz v. Connery, 863 F.2d 551 (7th Cir.1988).
 
 
 11
 O'Brien must first establish how long he knew or should have known of his interest in this case. He is now petitioning to intervene to contest the issuance of bonds without a referendum under the Illinois Tort Immunity Act as the means of funding the remedial measures ordered by the court. However, this is an issue of which he has long been aware. O'Brien has been challenging this method of funding since his first tax protest in 1992. That first tax protest, and the others following it, raised the same issues as are raised in the motion to intervene here. O'Brien was the lead attorney in the tax protest cases from the very beginning and clearly was very much aware of the funding mechanism in the interim orders and its probable impact on his interests. Even O'Brien concedes that he knew that his interest might be "adversely affected by this action since at least the filing of the first tax protest objection in the fall of 1992." Intervenor Br. at 18. Thus O'Brien fails to establish that he moved to intervene in a timely manner after he learned of the case's effect on his interests.
 
 
 12
 O'Brien contends that the district court's most recent order, issued December 5, 1994, authorizing the issuing of bonds without referendum under the authority of the Tort Immunity Act, and the proposed remedial decree discussed earlier, are the motivation for his current effort to intervene and the explanation of his failure to intervene sooner. He claims that his intervention is timely because he is contesting the December 5th order shortly after its entry, and because the recently proposed remedial decree affects his interests more than the previous interim orders. However, these events, while recent, are not new. They do not erase the fact that the court has authorized funding under the Tort Immunity Act since the second interim order in 1991, and that O'Brien has been aware of this funding and its ramifications since at least 1992. The December 5, 1994 order approving the issuance of bonds is just the newest in a series of such court-authorized bonds. Further, the proposed remedial decree simply adopts and ratifies the language first accepted by the court in the second interim order in 1991. Even if adopted, the remedial decree would not create or "retroactively validate" any means of funding that was not already approved and implemented by the district court in the second interim order.[4] O'Brien has no legitimate reason for waiting so long to intervene; the district court was correct in concluding that O'Brien had clearly "dragged his feet" on an issue of which he had been aware for years. Mem.Op. at 7.
 
 
 13
 However, the conclusion that O'Brien has unjustifiably delayed in moving to intervene does not necessarily answer the timeliness question. As the district court noted, the ultimate test in considering timeliness is the prejudice suffered by the parties because of O'Brien's delay in petitioning to intervene. Mem.Op. at 7; Nissei, 31 F.3d at 439 ("the most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention ... will prejudice the existing parties to the case"). In this case, we believe the prejudice to the parties to be significant for a number of reasons. The bonds proposed in the interim orders have already been ordered by the court. In October of 1991 the court ordered the Board of Education to fund school renovations and capital expenditures using the contested bond method, and in June of 1992, the court ordered the issuance of $10 million in bonds to fund other remedial obligations under the second interim order. Taxes have also been levied in 1991, 1992 and 1993 to fund the mandates of the second interim order. Hearings have been held on liability, and extensive findings have been made both by the Magistrate Judge and by the district court. A Declaratory Judgment and Permanent Injunction was issued in 1994, and the parties have been formulating remedial programs, and funding for these programs, literally for years. O'Brien's intervention at this stage would be significantly disruptive and detrimental to both parties and to the goal of ending discrimination.
 
 
 14
 O'Brien argues, however, that the prejudice to the parties in the case stems simply from his proposed intervention, not from the delay involved in his proposed intervention, and thus should not be considered. He is correct that prejudice resulting from delay is the operative issue. Schultz v. Connery, 863 F.2d 551, 554 (7th Cir.1988); City of Bloomington v. Westinghouse Elec. Corp., 824 F.2d 531, 535 (7th Cir.1987). However, the prejudice here does result from delay. The parties have proceeded since 1991 in designing remedies based on the funding that O'Brien contests. Had he intervened earlier, other methods of funding could certainly have been explored; at the least the parties and the court would not have wasted the time and effort designing, approving and implementing this funding program. But now bonds have been issued, taxes levied and remedial arrangements put into place. Two interim orders have been proposed, adopted and implemented, a final judgment has been issued and remedial programs are already well established in the schools. Thus, we agree with the district court's conclusion that O'Brien's considerable delay in moving to intervene would cause significant prejudice to the parties were the intervention allowed at this late date. City of Bloomington, 824 F.2d at 536 (fact that "time invested in ... painstaking negotiations would be wasted" if late intervention were allowed was significant factor in denying intervention).
 
 
 15
 O'Brien next claims that the prejudice he himself will suffer if denied the right to intervene outweighs the prejudice suffered by the parties if he does intervene. Specifically, he argues that "the disposition of this case 'may' be binding ... as a result of res judicata or collateral estoppel," thereby barring him from pursuing his tax protest cases. Intervenor Br. at 28. The Board of Education and People Who Care both argue that O'Brien will not be prejudiced by the denial of his motion to intervene because he can litigate his concerns in his pending tax protest cases. He has, they argue, a forum where his concerns can be addressed, where he is already a party and where, in fact, consideration of his concerns has already begun. However, O'Brien contends that, if the district court adopts the proposed remedial decree, his tax protest cases will be barred by res judicata or collateral estoppel, and he will never have his interests adjudicated. We thus examine each doctrine in turn to determine the effect its application may have on O'Brien's tax cases.
 
 
 16
 There are three elements required for a suit to be barred by res judicata. There must be 1) an identity of the parties or their privies, 2) an identity of the causes of action, and 3) a final judgment on the merits. Barnett v. Stern, 909 F.2d 973, 979 (7th Cir.1990). O'Brien contends that he meets these criteria because he "may" be considered in privity with the Board of Education.
 
 
 17
 While "[p]rivity is an elusive concept," it is generally applied to those with a sufficiently close identity of interests. In re L & S Industries, Inc., 989 F.2d 929, 932 (7th Cir.1993). Thus, the preclusive effects of judgments have been expanded to apply to nonparties, id., and "[r ]es judicata can sometimes operate to bar the maintenance of an action by persons who ... were not parties to the initial action." Gonzalez v. Banco Central Corp., 27 F.3d 751 (1st Cir.1994). "Under the doctrine of virtual representation, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." In re L & S Industries, 989 F.2d at 933 (internal citations omitted). Thus to be bound by res judicata, O'Brien must share interests so parallel to those of the Board of Education that it becomes his virtual representative.
 
 
 18
 This requirement of identity of interests and virtual representation is the missing element in O'Brien's argument. O'Brien's point here is that res judicata will bar his claim if he is not allowed to intervene. Res judicata cannot bar his claim, though, unless O'Brien's legal interests are so closely aligned with one or more of the parties that they are at least his virtual representatives. However, if he is so closely aligned with one or more of the parties that they are his virtual representatives, then his concerns have certainly received adequate representation. And, if his interests are represented, he need not intervene; in fact, he cannot intervene unless he lacks adequate representation by the existing parties. See, e.g., Nissei, 31 F.3d at 438; United States v. South Bend Community School Corp., 692 F.2d 623 (7th Cir.1982). Thus if O'Brien may intervene because he lacks sufficient representation, then there is no privity and res judicata will not bar his claim. Further, if he is adequately represented, there is privity and he is too well represented to intervene. Consequently, in attempting to prove that res judicata could bar his claim, O'Brien proves that he is adequately represented and should not be allowed to intervene. Therefore, the only time that res judicata could be of concern to O'Brien is when his legal interests are so aligned with those of the parties that he has no need or right to intervene in the first instance.
 
 
 19
 O'Brien's argument also may fail other requirements of the res judicata test. In addition to privity, res judicata requires an identity of the causes of action. Such identity exists where there is a "single core of operative facts giving rise to a remedy." Doe v. Allied-Signal, Inc., 985 F.2d 908, 913 (7th Cir.1993). In other words, O'Brien's cause of action must be based on the same facts and raise the same issues as the cause of action in People Who Care. The People Who Care suit is brought under 42 U.S.C. Secs. 1981, 1983 and 1988 for the alleged violation of the Fourteenth Amendment of the Constitution, and for declaratory relief under 20 U.S.C. Secs. 2201 and 2202. The central facts involve the discriminatory practices of the Rockford schools. O'Brien's claim, on the other hand, involves state law; he challenges the validity, under Illinois law, of the funding provisions used to provide the remedy. The tax claim asserted by O'Brien has not been raised in the present case. No existing party apparently shares O'Brien's concerns and therefore none has raised or is likely to raise the issues he has pursued. Thus the only way O'Brien's claim could be pursued in this federal case would be if O'Brien were allowed to intervene. There is obvious circularity to the argument that O'Brien should be allowed to intervene to raise a core of operative facts that could subsequently form the basis of a res judicata bar against O'Brien, which in turn could be invoked as a reason to allow him to intervene in the first place.
 
 
 20
 We conclude therefore that res judicata cannot bar O'Brien's pending tax cases, and that the only way it could do so would be in a scenario where his interests were so similar to those of the existing parties that he would have no need to intervene. We thus find O'Brien's claim that he should be allowed to intervene because he will otherwise be prejudiced by res judicata to be without merit.
 
 
 21
 O'Brien also claims that his tax cases may be barred by collateral estoppel. For collateral estoppel to apply, 1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action. Freeman United Coal Mining Co. v. Office of Workers' Compensation Program, 20 F.3d 289, 293-94 (7th Cir.1994); La Preferida v. Cerveceria Modelo, 914 F.2d 900, 906 (7th Cir.1990).
 
 
 22
 Again, we find that O'Brien's tax cases are not likely to be precluded. The fact that the issue O'Brien contests in his tax cases is the method of funding the remedy in the federal case does not create an identity of causes of action for purposes of collateral estoppel. The issue he contests--the funding of the remedy--was only addressed by the district court in its adoption of the consent agreements; it was not contested and litigated. The final judgment in this case dealt with issues of discrimination, not funding. The state law issue was not "litigated." See Kunzelman v. Thompson, 799 F.2d 1172, 1176 (7th Cir.1986) ("[d]ue process does not permit application of collateral estoppel against a party who did not have a full and fair opportunity to litigate the issue in the earlier proceeding").
 
 
 23
 Thus, the final judgment against the Board of Education concerned its responsibility for discriminatory practices; only the interim orders and the proposed remedial decree involve the funding issues. It is possible that these remedial orders could be seen as analogous to consent judgments, and O'Brien argues that as consent judgments they could be considered "final judgments" on the issue. However, "[c]onsent judgments, while settling the issue definitively between the parties, normally do not support an invocation of collateral estoppel." La Preferida, 914 F.2d at 906. The reason behind this general rule is that "issues underlying a consent judgment generally are neither actually litigated nor essential to the judgment." Id.[5] This is precisely the case here. Therefore, the remedial orders cannot estop O'Brien collaterally.
 
 
 24
 Finally, we note that O'Brien's collateral estoppel argument suffers from the same problems as his res judicata argument on the issues of adequate representation. For collateral estoppel to bar his tax cases, O'Brien must have been adequately represented in the present case. However, if his interests are so similar to those of the parties in this case that his concerns were fully represented, then he has no right to intervene. Again, his argument in support of the application of collateral estoppel undermines his claim that he needs to intervene.
 
 
 25
 In conclusion, we do not find the threat of res judicata or collateral estoppel to be a legitimate basis of prejudice to O'Brien. Further, even if O'Brien were prejudiced, and even if he could establish that he has interests that require separate representation, it would not overcome the obstacle of untimeliness. His concerns about preclusion were equally significant (or insignificant) three or four years ago when O'Brien decided to proceed in state court rather than moving to intervene in this case. The parties would be greatly prejudiced as a result of O'Brien's delay, and we do not find any prejudice that O'Brien might suffer, or any unusual circumstances, sufficient to require us to overturn the district court's denial of the motion to intervene. The district court did not abuse its discretion in denying the motion to intervene as untimely.
 
 
 26
 Finding the motion untimely, we need not address the other factors for consideration in a motion to intervene. City of Bloomington, 824 F.2d at 534 ("[i]f [an application to intervene] is untimely, intervention must be denied." (citing NAACP v. New York, 413 U.S. 345, 365-66, 93 S.Ct. 2591, 2602-03, 37 L.Ed.2d 648 (1973))); see also, e.g., Schultz v. Connery, 863 F.2d 551, 553 (7th Cir.1988). In conclusion, however, we note that this discussion also resolves the issue of practical impairment. O'Brien's interests are not significantly impaired by the denial of his motion to intervene. He can pursue his interests in his tax cases. We thus conclude that, even if O'Brien's interests have not been adequately represented in this case, the quite untimely filing of his motion, the prejudice that delay would cause to the parties in the case and the availability of alternative avenues by which O'Brien's concerns can be addressed all support the denial of his motion to intervene.
 
 
 27
 For these reasons, the opinion of the district court is
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 The second interim order, dated April 23, 1991, states in relevant part:
 The Board of Education ... may ... issue general obligation bonds without referendum to pay such liability, judgment or settlement. In addition thereto (or in the alternative), the District may pay for such recurring and continual incremental costs for such programs specified in this Order by additional levies in the District's Tort Immunity Fund.
 This Court has considered the provisions of Article IX--Payment of Claims and Judgment--of the Tort Immunity Act and finds that the funding by the District of the cost of said activities constitutes and is the payment by the District of a liability, tort judgment or settlement that authorizes the issuance of the District's non-referendum general obligation bonds referred to in Section 9-105 of the Tort Immunity Act or the levying of an annual rate of tax in the District's annual levy for Tort Immunity purposes, to pay for annual and recurring program costs (other than the institution of capital improvements) as required by this Order.
 
 
 [2]
 The proposed remedial decree states, in relevant part:
 The Board of Education ... may ... issue general obligation or revenue bonds without referendum to pay or for the purpose of creating a reserve for the payment of any such liability, judgment, or settlement. In addition thereto (or in the alternative), the District may pay for such liability and judgment, or settlement by additional levies in the District's Tort Immunity Fund.
 This Court has considered the provisions of Article IX--Payment of Claims and Judgment, of the Tort Immunity Act and other applicable provisions of the Tort Immunity Act, and expressly finds that the activities, obligations, programs, and other remedial relief (including the annual, recurring, and incremental costs thereof) required by the Remedial Decree (other than the institution of capital improvements) constitute compensatory damages for the violation of the rights of the Plaintiff class under the Fourteenth Amendment to the Constitution of the United States, and that the funding of the costs thereof by the Defendant Board of Education is for that reason and otherwise the payment by the Defendant Board of Education of a liability, tort judgment, or settlement under the Tort Immunity Act that authorizes the issuance of the Board of Education's non-referendum general obligation bonds referred to in Section 9-105 of the Tort Immunity Act or the levying of annual rate of tax in the School District's annual levy for Tort Immunity purposes under Section 9-107 of the Tort Immunity Act, to pay for the obligations, activities, programs, and other remedial relief, including the annual, recurring, and incremental costs thereof, (other than the institution of capital improvements) required by this Remedial Order.
 IT IS FURTHER HEREBY ORDERED that the funding provisions of this Remedial Decree are retroactively applied to, and this Court hereby approves and ratifies, all taxes previously levied (including any taxes levied from 1989 to the present) and bonds previously issued by the Defendant Board of Education to pay and fund any and all prior remedial measures and actions (other than the institution of capital improvements)....
 
 
 [3]
 O'Brien's tax objections were filed on behalf of himself and eight other 1991 taxpayers, himself and about 2600 other 1992 taxpayers, and himself and about 1600 other 1993 taxpayers. Intervenor Br. at 7
 
 
 [4]
 The proposed remedial decree contains language analogous to that used in the second interim order. See, supra, notes 2 and 3
 
 
 [5]
 When consent decrees have been given collateral estoppel effect, it is in situations where the factual findings necessary to a judgment are incorporated into a consent decree or where parties have "indicated clearly the intention that the decree to be entered shall ... determine finally certain issues." Klingman v. Levinson, 831 F.2d 1292, 1296 (7th Cir.1987); see also, e.g., Meyer v. Rigdon, 36 F.3d 1375, 1379 (7th Cir.1994); Graham v. IRS, 973 F.2d 1089, 1097 (3d Cir.1992)